**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF VIRGINIA**
**Charlottesville Division**

| | | |
|---|---|---|
| DWAYNE PHILLIPS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Civil Action No. 3:22-cv-00075-NKM-JCH |
| | ) | |
| RECTOR AND VISITORS OF THE | ) | |
| UNIVERSITY OF VIRGINIA, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS**
**PLAINTIFFS' COMPLAINT IN ITS ENTIRETY PURSUANT TO**
**FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

# TABLE OF CONTENTS

TABLE OF CONTENTS...................................................................................................... i

TABLE OF AUTHORITIES ............................................................................................... ii

I.     Preliminary Statement................................................................................................1

II.    Summary of Facts ......................................................................................................2

       A.     Plaintiffs' Allegations ....................................................................................2

       B.     UVA Health's Current Religious Exemption Review Process..............................4

       C.     Offers of Reinstatement or Accommodation ........................................................8

III.   Discussion ..................................................................................................................9

       A.     Motion to Dismiss Standard...........................................................................9

              1.      Rule 12(b)(1)......................................................................................9

              2.      Motion under Rule 12(b)(6)..............................................................10

       B.     Plaintiffs' Claims Are Barred in Whole or in Part by Sovereign Immunity..........11

              1.      Plaintiffs' claims against the Rector and Visitors of the University of
                      Virginia are barred by sovereign immunity and must be dismissed..........13

              2.      Plaintiffs' claims for money damages against the individual defendants in
                      their official capacity are barred by sovereign immunity and must be
                      dismissed........................................................................................13

              3.      Plaintiffs' state-law claims for injunctive relief against the individual
                      defendants in both their individual and official capacities are barred by
                      sovereign immunity and must be dismissed. ...............................................14

       C.     Plaintiffs' Claims for Injunctive Relief Are Moot. .................................................15

       D.     Plaintiffs' Federal Individual-Capacity Claims for Money Damages Are
              Inadequately Pled or Barred by Qualified Immunity.............................................17

       E.     The Claims of Plaintiffs Phillips, Ehrlich, and Tyson Are Precluded by Prior
              Grievance Proceedings...........................................................................................22

       F.     The Court Should Decline to Exercise Supplemental Jurisdiction over Any
              Remaining State Court Claims or Pieces of Those Claims....................................24

IV.    Conclusion ................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*,
    917 F.3d 206 (4th Cir. 2019) ..................................................10

*Armstrong v. Exceptional Child Ctr., Inc.*,
    575 U.S. 320 (2015)..................................................................12

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)............................................................ *passim*

*Bayadi v. Clarke*,
    No. 7:16cv00003, 2017 WL 1091946 (W.D. Va. Mar. 22, 2017)..........................24

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................10

*Bragg v. W. Va. Coal Ass'n*,
    248 F.3d 275 (4th Cir. 2001) ..................................................14

*Brooks v. Arthur*,
    626 F.3d 194 (4th Cir. 2010) ..................................................22

*Church of Scientology of Cal. v. United States*,
    506 U.S. 9 (1992)....................................................................15

*Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*,
    316 F. App'x 279 (4th Cir. 2009) ..........................................17

*Cobb v. Rector & Visitors of Univ. of Va.*,
    69 F. Supp. 2d 815 (W.D. Va. 1999) ......................................13

*Coleman v. Jones*,
    No. 20-7382, 2022 WL 2188402 (4th Cir. June 17, 2022)....................................24

*Cunningham v. Gen. Dynamics Info. Tech., Inc.*,
    888 F.3d 640 (4th Cir. 2018) ....................................................9

*Davani v. Clement*,
    263 F. App'x 296 (4th Cir. 2008) (per curiam) ......................24

*Doe v. Mills*,
    16 F.4th 20 (2d Cir. 2021) ........................................................21

*Does v. Bd. of Regents of the Univ. of Colo.*,
No. 21-cv-02637-RM-KMT, 2022 WL 4547563 (D. Colo. Sept. 29, 2022)....................20, 21

*Edelman v. Jordan*,
415 U.S. 651 (1974).................................................................................................11, 12, 13

*Fairfax v. CBS Corp.*,
2 F.4th 286 (4th Cir. 2021) ..............................................................................................11, 19

*Ferrelli v. United Court Sys.*,
No. 1:22-CV-0068, 2022 WL 673863 (N.D.N.Y. March 7, 2022) ........................................21

*Fox v. Custis*,
712 F.2d 84 (4th Cir. 1983) ................................................................................................25

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*,
528 U.S. 167 (2000).............................................................................................................16

*George v. Grossmont Cuyamca Cmty. Coll. Dist. Bd. of Governors*,
No. 22-cv-0424-BAS-DDL, 2022 WL 16722357 (S.D. Cal. Nov. 4, 2022) .........................20

*Gray v. Laws*,
51 F.3d 426 (4th Cir. 1995) ................................................................................................11

*Grutzmacher v. Howard Cty.*,
851 F.3d 332 (4th Cir. 2017) ..............................................................................................16

*Hans v. Louisiana*,
134 U.S. 1 (1890).................................................................................................................11

*Hawaii v. Gordon*,
373 U.S. 57 (1963) (per curiam) .....................................................................................12, 14

*Hendy v. Bello*,
555 F. App'x 224 (4th Cir. 2014) ..........................................................................................9

*Incumaa v. Ozmint*,
507 F.3d 281 (4th Cir. 2007) ..........................................................................................14, 15

*James v. Jane*,
282 S.E.2d 864 (Va. 1980)....................................................................................................24

*Kane v. De Blasio*,
No. Civ. 7863 (NRB), 2022 WL 3701183 (S.D.N.Y. Aug. 26, 2022) ..................................21

*Kentucky v. Graham*,
473 U.S. 159 (1985).........................................................................................................12, 13

iii

*Kerns v. United States*,
   585 F.3d 187 (4th Cir. 2009) .................................................................................10

*Leigh v. Artis-Naples*,
   No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780 (M.D. Fla. Dec. 30, 2022) .......................21

*Lighthouse Fellowship Church v. Northam*,
   20 F.4th 157 (4th Cir. 2021) ...............................................................................17

*Lunsford v. Wythe Cty. Sheriff*,
   No. 7:18-cv-00038, 2019 WL 691787 (W.D. Va. Feb. 19, 2019) ...........................................9

*McVey v. Stacy*,
   157 F.3d 271 (4th Cir. 1998) ..........................................................................18, 22

*Medimmune, Inc. v. Genentech, Inc.*,
   549 U.S. 118 (2007)........................................................................................15

*Monell v. N.Y.C. Dep't of Soc. Servs.*,
   436 U.S. 658 (1978)........................................................................................12

*Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
   591 F.3d 250 (4th Cir. 2009) ...............................................................................10

*Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*,
   752 F. Supp. 2d 721 (W.D. Va. 2010) .....................................................................10

*Pennhurst State Sch. & Hosp. v. Halderman*,
   465 U.S. 89 (1984).......................................................................................12, 14

*Pritchett v. Alford*,
   973 F.2d 307 (4th Cir. 1992) ..............................................................................18

*Schilling v. Washburne*,
   592 F. Supp. 3d 492 (W.D. Va. 2022) ....................................................................10

*Sigma Lambda Upsilon/Señoritas Latinas Unidas Sorority v. Rector & Visitors of*
   *the Univ. of Va.*,
   503 F. Supp. 3d 433 (W.D. Va. 2020) ......................................................................9

*Smith v. Rector & Visitors of Univ. of Va.*,
   78 F. Supp. 2d 533 (W.D. Va. 1999) .....................................................................13

*Tabb v. Bd. of Educ. of Durham Pub. Schs.*,
   29 F.4th 148 (4th Cir. 2022) ..............................................................................10

*Tigrett v. Rector & Visitors of Univ. of Va.*,
   97 F. Supp. 2d 752 (W.D. Va. 2000) .....................................................................13

*Together Emps. v. Mass. Gen. Brigham Inc.*,
    573 F. Supp. 3d 412 (D. Mass. 2021) .................................................................21

*United Mine Workers of Am. v. Gibbs*,
    383 U.S. 715 (1966) ...........................................................................................24

*Velasco v. Gov't of Indonesia*,
    370 F.3d 392 (4th Cir. 2004) .............................................................................10

*Virginia ex rel. Coleman v. Califano*,
    631 F.2d 324 (4th Cir. 1980) ...............................................................................9

*Wall v. Wade*,
    741 F.3d 492 (4th Cir. 2014) .............................................................................16

*Whitley v. Commonwealth*,
    538 S.E.2d 296 (Va. 2000)............................................................................22, 23

*Will v. Mich. Dep't of State Police*,
    491 U.S. 58 (1989).............................................................................................12

*Ex parte Young*,
    209 U.S. 123 (1908)......................................................................................12, 14

## Constitution

U.S. CONST. amend. I ...................................................................................... passim

U.S. CONST. amend. XI ..........................................................................................11

U.S. CONST. art. III, § 2 .........................................................................................15

Va. CONST. art. I, § 16 ............................................................................................24

## Statutes

28 U.S.C. § 1367(c) .................................................................................................24

42 U.S.C. § 1983 .........................................................................................3, 11, 22

## Rules

Fed. R. Civ. P. 12(b)(1)..............................................................................................9

Fed. R. Civ. P. 12(b)(6)............................................................................................10

Fed. R. Civ. P. 25(d) ...............................................................................................14

v

## I.   PRELIMINARY STATEMENT

To combat the spread of COVID-19 among medical workers and their patients, UVA Health implemented a mandatory vaccination policy for its employees, complete with a process for each employee to seek an exemption based on his or her sincerely held religious belief. Plaintiffs each made requests for religious exemptions from the vaccination requirement, their requests were not granted and, ultimately, their employment was terminated in November 2021 pursuant to the policy.  On December 14, 2022, Plaintiffs filed this action.

This Court should dismiss all counts in Plaintiffs' Complaint.  Since Plaintiffs' departure from UVA Health, it has implemented a new policy for reviewing religious exemptions, and has offered to reinstate or accommodate Plaintiffs, which renders moot their claims for injunctive relief.  Plaintiffs' claims for monetary relief fare no better.  Claims against Defendants in their official capacities would violate the Commonwealth of Virginia's sovereign immunity.  Federal claims against Defendants in their individual capacities are inadequately pled or barred by qualified immunity.  And state claims against Defendants in their individual capacities raise novel and complex issues of Virginia law that this Court should decline to answer before Virginia's courts have had a chance to weigh in.

For these reasons, and as discussed further below, the Court should dismiss Plaintiffs' Complaint in its entirety.[1]

---

[1] Defendants have attached an Appendix that identifies the defenses asserted on behalf of each defendant as to each claim and each form of relief.

## II.    SUMMARY OF FACTS

### A.    Plaintiffs' Allegations[2]

On August 25, 2021, UVA Health announced a mandatory COVID-19 vaccination policy for its employees, with a deadline of November 1, 2021, for compliance.  Compl. (Dkt. 1) ¶ 51.  UVA Health formed a Committee to review religious exemption requests made by employees.  *Id.* ¶ 54.  Each of the six Plaintiffs sought a religious exemption from the COVID-19 vaccination policy, and each was denied.  *Id.* ¶¶ 89, 123, 141, 153, 171, 184.  Plaintiffs refused to be vaccinated, and they were terminated from their employment with UVA Health at various dates in November 2021.  *Id.* ¶¶ 91, 126, 142, 155, 172, 186.

On December 14, 2022, Plaintiffs filed this lawsuit.  They have asserted claims against the Rector and Visitors of the University of Virginia (as a body), as well as claims against several individuals in their official and/or individual capacities.  Compl. ¶¶ 35–50.  All of the individual defendants were officers or employees of UVA Health at the time of the events alleged, although one of the individual defendants, Melissa Frederick, is no longer employed by UVA Health.  *Id.*  All of the individual defendants are alleged to have been acting under color of state law at the time of the events alleged.  *Id.* ¶ 212.

The individual-capacity claims are asserted against the following:

- K. Craig Kent, MD, identified as the Chief Executive Officer of UVA Health and UVA's Executive Vice President for Health Affairs.  *Id.* ¶ 42.

- Wendy Horton, identified as the Chief Executive Officer of UVA Medical Center.  *Id.* ¶ 43.

- Mary Frances Southerland, identified as the Chief Administrative Office of UVA Health.  *Id.* ¶ 44.

---

[2] Rather than repeat all the allegations in Plaintiffs' 295-paragraph Complaint, Defendants attempt below to summarize the allegations relevant to the motion to dismiss.

- John Does 1–5 (collectively the Religious Accommodation Committee), identified as senior Human Resources Personnel of UVA Health who are the voting members of the committee that reviewed religious exemption requests.  *Id.* ¶ 46.

- Melissa Frederick, who is identified as a former Assistant Vice President of UVA Health and the chairperson of the Religious Accommodation Committee.  *Id.* ¶ 47.

Other than these allegations, the Complaint does not identify any specific conduct by any Defendants in their individual capacity.  Rather, the Complaint lumps all of the Defendants together throughout its 295 paragraphs. *See generally* Compl.; *see also* Compl. ¶ 50 (stating all of the defendants are referred to collectively as "Defendants" or "UVA Health").

Plaintiffs contend that Defendants violated their federal and state constitutional rights. They have asserted § 1983 claims (Counts I–IV) as well as state-law claims purportedly arising under the Virginia Constitution (Counts V–VII).  They seek injunctive relief and money damages with respect to each claim.  Compl. at 48.  The specific injunctive relief requested is as follows:

> Enter preliminary and permanent injunctions directing that Defendants discontinue the operation of the Religious Accommodations Committee, grant religious exemptions from COVID-19 vaccination to all Class members, reinstate the employment status of any Class member who requests it, and consider or reconsider all pending or future job applications by Class members without attaching any negative weight to their COVID-19 vaccination status.

*Id.* at  48 ¶ B.

In support of their claims, Plaintiffs contend that Defendants engaged in the following unconstitutional conduct.  First, according to Plaintiffs, Defendants established a list of "favored" religions, Defendants only granted religious exemptions to employees who were members of those favored religions, and all other requests (including Plaintiffs') were denied.  Compl. ¶¶ 68–70. Second, Plaintiffs contend that Defendants "categorically" denied religious exemptions where the employee objected to vaccination based on a connection between the available vaccines and fetal cell lines.  According to Plaintiffs, Defendants determined that, although the Moderna and Pfizer

3

vaccines were tested on fetal cells early in their development, that testing was too remote to support a sincerely held religious belief that was in conflict with the vaccination policy. *Id.* ¶ 74.

To support their claim that some religions were "favored" and others were "disfavored," Plaintiffs point to a document used to train the Committee entitled "Vaccine Religious Accommodation Requests." *See* Compl. Ex. A (Dkt. 1-1). Plaintiffs also cite and rely on the testimony of Melissa Frederick, at a grievance hearing initiated by Mr. Phillips. Plaintiffs allege that Ms. Frederick testified that employees in the "favored" religions received an automatic exemption. Compl. ¶ 64.

As noted, Mr. Phillips filed a grievance proceeding with the Virginia Office of Employment Dispute Resolution. *Id.* ¶ 92. Plaintiffs Ehrlich and Tyson also filed grievances. *Id.* ¶¶ 126, 156. In the grievance proceedings, these Plaintiffs sought to challenge UVA Health's determination that they had failed to state a sincerely held religious belief in conflict with the vaccination policy. Compl. ¶¶ 92–99, 126–27, 156–60. In each case, the Hearing Officer ruled against them on this issue. *Id.* Copies of the Hearing Officer's Decision in each case, which are cited and relied on by Plaintiffs in their Complaint, are attached as **Exhibits A–C**.[3]

B. **UVA Health's Current Religious Exemption Review Process**

Plaintiff's Complaint challenges the decisions made by UVA Health's Religious Exemption Committee and exemption review process as they existed in Fall 2021 (the "2021 Review Process"). However, in recognition of the fact that unvaccinated team members no longer pose the same degree of risk to many of UVA Health's patients as they did in 2021, UVA Health has updated its review process for exemptions and has provided additional guidance to the

---

[3] *See also* Dkt. 1–2 (Phillips decision); Dkt. 7–12 (Ehrlich decision); and Dkt. 7–28 (Tyson decision). The decisions in the Phillips and Ehrlich proceedings were subsequently amended to deny severance, and the amended decisions are attached as **Exhibits D–E.**

employees that review those exemption requests (the "2022 Procedure").  Fittes Decl. ¶¶ 4–5 (explaining decreased risk based on high vaccination rate among employees, availability of therapeutics to treat COVID-19, and changes to quarantine rules).[4]

The 2022 Procedure was effective as of October 12, 2022, and provided for a central point of intake of all religious and medical exemption requests for COVID-19, influenza, and other required vaccinations (the "Exemption Coordinator").  Fittes Decl. ¶ 6.  In September 2022, UVA Health hired Katy Hoffman, Senior Director, HR Services, to serve as Exemption Coordinator.  *Id.* ¶ 7.

Pursuant to the 2022 Procedure, the Exemption Coordinator undertakes an initial analysis of whether the employee has stated a "sincerely held religious belief" and whether such belief conflicts with the vaccination or other employee health requirement at issue, utilizing information provided by the employee.  *Id.* ¶ 8.  The Exemption Coordinator may contact the employee for clarification and additional information as needed to fully consider both such issues.  *Id.*  The Exemption Coordinator also undertakes an initial assessment of "undue hardship" by collecting the necessary information regarding the employee's position, patient contact, mitigation options, and other factors.   The Exemption Coordinator provides such information to the Hospital Epidemiologist and may consult with individuals within hospital operations to evaluate (i) whether accommodation of the requestor's religious belief can be undertaken without imposing an undue hardship on the Medical Center and, (ii) if not, whether the requestor may be offered an alternate role within the facility in a location in which the requested accommodation would not impose such

---

[4] The Fittes Declaration is submitted in support of Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction and in support of this Motion to Dismiss.  It is filed as a stand-alone document.

5

an undue hardship.  *Id.* ¶ 9.  The Exemption Coordinator is also responsible for communicating any decision to the employee, including any required mitigation efforts.  *Id.* ¶ 10.

The 2022 Procedure further contemplates the re-constitution of the "Exemption Committee" to include representatives from employee health, human resources, hospital operations, and other subject matter experts to enable a more holistic review of an employee's request and, more particularly, the question of "undue hardship."  Lawyers from OUC will participate in the Exemption Committee in an advisory capacity.  The Exemption Committee has now been fully constituted and will be trained shortly, and effective as of early February 2023, the Exemption Coordinator will submit any potential denials to the Exemption Committee and provide active support as needed or requested.  *Id.* ¶ 11.  In the interim, the Exemption Coordinator is completing an initial assessment and consulting with the Hospital Epidemiologist, Medical Center operations and/or representatives from OUC to review exemption requests that are submitted.  *Id.* ¶ 12.

The 2022 Procedure, which has been provided to the persons involved in the review process, including the Exemption Coordinator, and will be provided to the Exemption Committee, provides the following guidance with respect to the review of exemption requests:

- The EEOC states that an employer should generally proceed on the assumption that a request for religious accommodation is based on sincerely held religious beliefs, practices, or observances. Please also note that the definition of religion is not limited to organized religion or traditional religious beliefs. The fact that an employee's religious beliefs share little or nothing in common with traditional religious systems is irrelevant to the sincerity with which that belief is held. No one factor or consideration is determinative, and the Reviewer should evaluate religious objections on an individual basis.

- The Reviewer should not assume that an employee is insincere simply because some of the employee's practices deviate from the commonly followed tenets of the employee's religion, or because the employee adheres to some common practices but not others. For example, the fact that a Catholic employee's belief deviates from the doctrines of the Catholic Church, or that the employee does not abide by the tenets of the Catholic Church in other aspects of the employee's life, is not dispositive as to whether the employee's

6

belief is sincerely held. In addition, although prior inconsistent conduct may be relevant to the question of sincerity, an individual's beliefs—or the extent or degree of adherence—may change over time and, therefore, an employee's newly-adopted or inconsistently observed belief may nevertheless be sincerely held.

- The Reviewers have been provided examples to help guide them in their review, including the following:

  o Example 1: "*I believe my body is a temple as stated in the bible, and therefore I should not put impure substances into my body. I believe the influenza vaccine is an impure substance.*" The Reviewer should find that this individual has stated a sincerely held religious belief and grant the exemption request in the absence of objective evidence that the belief is not sincerely held. The inconsistent application of a religious belief is not by itself evidence that the belief is not sincerely held. In this example, the fact that the employee may have consented to previous vaccines does not establish the insincerity of his or her religious belief regarding the influenza vaccine.

  o Example 2: "*I believe that the vaccine contains a microchip that the government is using to spy on people. As a result, I do not want the vaccine.*" This objection is not based on a religious belief, and therefore the Reviewer should find that the employee has not stated a sincerely held religious belief.

  o Example 3: "*I believe that the vaccine contains a microchip that the government is using to spy on people. This indicates a sign of the end times as foretold in the Book of Revelation. I believe the vaccine is the Mark of the Beast and I cannot accept it.*" By contrast to Example 2, the basis of the objection in this example is a religious belief about the meaning of the vaccine. The objection is therefore based on a sincerely held religious belief.

  o Example 4: "*I am a Christian and I am opposed to abortion, and I will not use a product that contains, or was derived from or developed using, the cells of an aborted fetus. As a result, I am opposed to receiving the vaccine and request a religious exemption*." Some vaccines are tested on or manufactured using human cells originally derived from aborted fetuses. In many cases, the cells used are from cell lines that have been continuously replicated but originally derived from abortions performed decades ago.  If all available vaccines were manufactured using such cells or were tested on such cells, or otherwise made use of fetal cells, then this objection would be sufficient to state a sincerely held religious belief [that conflicts with the vaccine requirement].

Fittes Decl. ¶¶ 6, 13 and **Exhibit 1** attached thereto.

UVA Health is committed to continuing to review requests for religious exemption in accordance with applicable law, EEOC guidance, and the 2022 Procedure as described above.

Fittes Decl. ¶ 14.  In addition to the foregoing, UVA Health will continue to consider the degree to which accommodating an individual employee's religious exemption request will impose an undue hardship on the Health System.  If it is determined that granting the exemption would be an undue hardship, the Committee may engage in further interactive dialog to determine if there is an alternative accommodation which would mitigate the undue hardship, such as an alternative position within the Health System.  *Id.* ¶ 15.

As noted, the 2022 Procedure became effective on October 12, 2022—well before this lawsuit was filed.  Since implementing this new review process, and as of January 13, 2023, UVA Health has received 20 requests for religious exemption from the COVID-19 vaccine, and has granted 13 of them.  Of the remaining seven, four were denied based on undue hardship, one elected to be vaccinated before the denial was communicated, and the remaining two have been approved and communication of the approval will be forthcoming.  None of these requests cited a specific denomination with known objections to vaccination.  Rather, each of these requests were based on more personalized religious beliefs that UVA Health accepted as sincerely held religious beliefs that preclude vaccination.  *Id.* ¶ 17.

## C.    Offers of Reinstatement or Accommodation

UVA Health's commitment to the 2022 Procedure is further underscored by its recent offer of reinstatement or accommodation to Plaintiffs.  On January 19, 2023, UVA Health (through counsel) advised Plaintiffs as follows:

> [W]e write to advise that the religious exemption requests of Dwayne Phillips, Mark Ehrlich, Ryan Meszaros, Rebecca Tyson, Rebecca Loflin, and Janet Ripley (collectively, "Plaintiffs") are granted under UVA Health's updated Procedure and Guidance (which we have provided to you) based on their prior submissions.  Pending timely and successful application, Loflin, Meszaros, Ripley, and Tyson are offered reinstatement in their prior positions (or a substantially similar position).  Under the same conditions, because of the nature of their prior duties and ongoing concerns for patient safety, Ehrlich and Phillips are offered an accommodation in a position elsewhere at UVA Health.

8

> Please note that although UVA Health will request these individuals to respond to a requisition, including the submission of an application, such submission is required for administrative reasons, including the need to update their experience and education to the extent appropriate. The requisition and position would be established specifically for each applicant (i.e., there will be no other applicants for the positions). They will need to undergo, and final hiring would be contingent on, all of the normal pre-hire screening (background check, employee health screening, drug testing where applicable, etc.).

See **Exhibit F** (Email from R. Tata to S. Diehl dated January 19, 2023) (also noting that the offer of reinstatement/accommodation is neither conditioned on Plaintiffs' release of their claims nor an admission of Defendants' liability).

### III.   DISCUSSION

#### A.   Motion to Dismiss Standard

Defendants seek dismissal of Plaintiffs' Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) (lack of subject matter jurisdiction) and 12(b)(6) (failure to state a claim).

#### 1.   Rule 12(b)(1)

Defendants' motion to dismiss based on sovereign immunity and mootness challenge the Court's subject matter jurisdiction and are brought pursuant to Rule 12(b)(1).  *See*, *e.g.*, *Sigma Lambda Upsilon/Señoritas Latinas Unidas Sorority v. Rector & Visitors of the Univ. of Va.*, 503 F. Supp. 3d 433, 441 (W.D. Va. 2020) (sovereign immunity challenges subject matter jurisdiction) (citing *Cunningham v. Gen. Dynamics Info. Tech., Inc.*, 888 F.3d 640, 649 (4th Cir. 2018)); *Lunsford v. Wythe Cty. Sheriff*, No. 7:18-cv-00038, 2019 WL 691787, at *1 (W.D. Va. Feb. 19, 2019) ("A finding of sovereign immunity precludes federal courts from exercising subject matter jurisdiction.") (citing *Hendy v. Bello*, 555 F. App'x 224, 226 (4th Cir. 2014)); *Virginia ex rel. Coleman v. Califano*, 631 F.2d 324, 326 (4th Cir. 1980) ("[f]ederal courts have no jurisdiction to decide moot cases").

A 12(b)(1) motion may assert a facial challenge or a factual challenge.  *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009).  A facial challenge accepts the allegations in the complaint as true, and based on those allegations, asserts a lack of subject matter jurisdiction.  *Id.* at 193.  A factual challenge relies on declarations or other evidence to establish the lack of subject matter jurisdiction.  *Velasco v. Gov't of Indonesia*, 370 F.3d 392, 398 (4th Cir. 2004).  Here, Defendants' motion based on sovereign immunity is a facial challenge.  Defendants' motion based on mootness is a factual challenge and relies on the Declaration of Karmen Fittes and offer of reinstatement/accommodation.

### 2.    Motion under Rule 12(b)(6)

Defendants' motion to dismiss based on qualified immunity and issue preclusion is based on Rule 12(b)(6).

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of a claim."  *Tabb v. Bd. of Educ. of Durham Pub. Schs.*, 29 F.4th 148, 155 (4th Cir. 2022); *Schilling v. Washburne*, 592 F. Supp. 3d 492, 496 (W.D. Va. 2022).  In considering a motion to dismiss, the factual allegations in the complaint must be accepted as true.  *Tabb*, 29 F.4th at 155.  However, legal conclusions are not entitled to a presumption of truth.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Odyssey Imaging, LLC v. Cardiology Assocs. of Johnston, LLC*, 752 F. Supp. 2d 721, 723 (W.D. Va. 2010).  Moreover, "bare assertions" that merely recite the elements of a claim are insufficient to withstand a motion to dismiss.  *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009).

In order to "survive a motion to dismiss, 'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'"  *ACA Fin. Guar. Corp. v. City of Buena Vista, Va.*, 917 F.3d 206, 212 (4th Cir. 2019) (quoting *Iqbal,* 556 U.S. at 678) (some internal quotation marks omitted); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544,

555 (2007) ("[A] formulaic recitation of the elements of a cause of action will not do.").  The "plausibility" determination is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678–79.

Although the Court is generally restricted to the four corners of the complaint in considering a 12(b)(6) motion, the Court may consider documents outside of the complaint if they are referenced and relied on in the complaint.  *See Fairfax v. CBS Corp.*, 2 F.4th 286, 292 (4th Cir. 2021) ("[A] court may also consider documents integral to and relied upon in the complaint … so long as the plaintiff does not question their authenticity . . . .").

**B.**    **Plaintiffs' Claims Are Barred in Whole or in Part by Sovereign Immunity.**

Plaintiffs have attempted to assert claims against the Rector and Visitors of the University of Virginia under 42 U.S.C. § 1983 for alleged violations of the United States Constitution (Counts I–IV) and separately for alleged violations of the Virginia Constitution (Counts V–VII).  Plaintiffs have asserted the same claims against several officers and employees of UVA Health in a combination of their official and individual capacities.  Plaintiffs seek both money damages and injunctive relief.  Compl. at 48.  As discussed below, these claims are barred in whole or in part by sovereign immunity.

The default rule is that a State may not be sued in federal court.  *Edelman v. Jordan*, 415 U.S. 651, 662–63 (1974); *see* U.S. Const. amend. XI (precluding federal jurisdiction over suits brought by citizens of other States); *Hans v. Louisiana*, 134 U.S. 1, 20–21 (1890) (holding that suits brought by citizens against their State are barred by sovereign immunity).  Suit brought against an "arm[] of the State" is equivalent to suit against the State itself and likewise precluded by sovereign immunity.  *Gray v. Laws*, 51 F.3d 426, 430 (4th Cir. 1995) (citation and brackets omitted).  So too are suits brought against state officials in their official capacities, because they "generally represent only another way of pleading an action against an entity of which an officer

11

is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (quoting *Monell v. N.Y.C. Dep't of Soc. Servs.*, 436 U.S. 658, 690 n.55 (1978)).  These official capacity suits are therefore (with one "important exception") barred "regardless of the nature of the relief sought."  *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100, 102 (1984); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989) (Congress has not abrogated state sovereign immunity under 42 U.S.C. § 1983).

The "important exception" is "a suit challenging the constitutionality of a state official's action."  *Pennhurst*, 465 U.S. at 102; *see Ex parte Young*, 209 U.S. 123 (1908).  Under *Young*, a state officer acting pursuant to state authority that is unconstitutional is "stripped of his official or representative character," and does not act on behalf of the State at all.  *Pennhurst*, 465 U.S. at 102–03 (quoting *Young*, 209 U.S. at 160).  But that "fiction" extends only so far.  *Id.* at 105.  Claims against state officers that seek damages to be paid out of the state treasury are still forbidden.  *Edelman*, 415 U.S. at 663.  In other words, "official-capacity actions" may only be "for prospective relief."  *Graham*, 473 U.S. at 167 n.14; *see Armstrong v. Exceptional Child Ctr., Inc.*, 575 U.S. 320, 327 (2015) ("The ability to sue to enjoin unconstitutional actions by state and federal officers is the creation of courts of equity, and reflects a long history of judicial review of illegal executive action, tracing back to England.").  Additionally, the logic of *Young* cannot be applied when the state official's actions are challenged as unlawful **because of state law**; in those situations, the suit is still considered one against the State.  *Pennhurst*, 465 U.S. at 106.

Moreover, the label that a plaintiff attaches to a claim—individual capacity or official capacity—is not dispositive.  Rather, where a plaintiff seeks injunctive relief that in effect "would operate against the" State, the claim is treated as an official capacity claim.  *Id.* at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam)).

Applying these principles here requires dismissal of the following:  (1) all claims against the Rector and Visitors of the University of Virginia (as a body), (2) all claims for damages against the individual defendants in their official capacity, and (3) all state-law claims for injunctive relief against the individual defendants—whether styled as an official capacity or individual capacity claim.

### 1. Plaintiffs' claims against the Rector and Visitors of the University of Virginia are barred by sovereign immunity and must be dismissed.

All claims against the Rector and Visitors of the University of Virginia (sued collectively as a body, Compl. ¶ 35) must be dismissed (Counts I–VII).  On multiple occasions, this Court has concluded that this body is an arm of the Commonwealth and thus protected from suit in federal court.  *See, e.g.*, *Cobb v. Rector & Visitors of Univ. of Va.*, 69 F. Supp. 2d 815, 823 (W.D. Va. 1999); *Tigrett v. Rector & Visitors of Univ. of Va.*, 97 F. Supp. 2d 752, 756 (W.D. Va. 2000); *Smith v. Rector & Visitors of Univ. of Va.*, 78 F. Supp. 2d 533, 537 (W.D. Va. 1999).

### 2. Plaintiffs' claims for money damages against the individual defendants in their official capacity are barred by sovereign immunity and must be dismissed.

Likewise, all of Plaintiffs' claims for money damages against the individual defendants sued in their official capacity are barred by sovereign immunity (Counts I–VII).  Plaintiffs seek "actual damages, including front pay, back pay, treble damages and statutory penalty, interest, emotional distress and pain and suffering, compensatory damages, punitive damages, and any damages or penalties available at law."  Compl. at 48¶A.  That award would "impose a liability which must be paid from public funds" because (in their official capacities) the parties are simply agents of the Commonwealth.  *Edelman*, 415 U.S. at 663; *Graham*, 473 U.S. at 165–66.  Thus, Plaintiffs' official-capacity claims seeking money damages must be dismissed.

13

**3.    Plaintiffs' state-law claims for injunctive relief against the individual defendants in both their individual and official capacities are barred by sovereign immunity and must be dismissed.**

In addition to the above, Plaintiffs' state-law claims for injunctive relief against the individual defendants (Counts V–VII) are barred by sovereign immunity.  The *Ex parte Young* exception to sovereign immunity does not apply to state-law claims.  *Pennhurst*, 465 U.S. at 106; *Bragg v. W. Va. Coal Ass'n*, 248 F.3d 275, 292–93 (4th Cir. 2001).

It does not matter whether the claims are styled as official-capacity or individual-capacity claims.  "The general rule is that relief sought nominally against an officer is in fact against the sovereign if the decree would operate against the latter."  *Pennhurst*, 465 U.S. at 101 (quoting *Gordon*, 373 U.S. at 58) (alteration omitted).  Here, any injunction sought against the individual defendants is substantively against them in their official capacities notwithstanding the complaint's reference to their individual capacities, because the "decree would operate against the" Commonwealth.  *Id.* (same).

The claims against Melissa Frederick exemplify this point; Frederick "is a **former** Assistant Vice President" of the Health System and Plaintiffs allege she "**was** the chairperson of UVA Health's Religious Accommodation Committee at the time the Named Plaintiffs were denied religious exemptions and fired."  Compl. ¶ 47 (emphasis added).  An injunction against her, divorced from her position, would make no sense, because she is not acting on behalf of the Commonwealth and is in no position to effectuate UVA Health's policies (nor is she as a private citizen subject to the Constitution's dictates).  Such relief would only be effective if enforced against her successor to **public office**.  *See* Fed. R. Civ. P. 25(d).[5]

---

[5] For this reason, if the claims were indeed against her in an individual capacity, they would be moot insofar as they seek injunctive relief.  *See Incumaa v. Ozmint*, 507 F.3d 281, 287 (4th Cir. 2007) (explaining that a claim for injunctive relief is moot when such relief "would have no

Thus, the state-law claims for injunctive relief against the individual defendants—whether styled as official capacity or individual capacity—must be dismissed.

**C.      Plaintiffs' Claims for Injunctive Relief Are Moot.**

UVA Health seeks dismissal of all of Plaintiffs' claims (Counts I–VII) to the extent they seek injunctive relief.  The 2021 Review Process that Plaintiffs complain of no longer exists, and Plaintiffs have been offered reinstatement or accommodation.  Thus, any request for injunctive relief is moot.

It is well-settled that a federal court may only decide "Cases" and "Controversies," U.S. CONST. art. III, § 2—that is, disputes that are "definite and concrete, touching the legal relations of parties having adverse legal interests," and that are "real and substantial," seeking "specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical set of facts," *Medimmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (internal citations and quotations omitted).  A federal court has "no authority to give opinions upon moot questions or abstract propositions, or to declare principles or rules of law which cannot affect the matter in issue in the case before it." *Church of Scientology of Cal. v. United States*, 506 U.S. 9, 12 (1992) (internal citations and quotations omitted).  A case may become moot as to a claim for injunctive relief, even if a claim for money damages based on past conduct survives. *Incumaa*, 507 F.3d at 286–87.

Here, Plaintiffs' Complaint challenges, and their request for injunctive relief is based on, UVA Health's 2021 Review Process for religious exemptions.  But that review process no longer exists.  It has been replaced by the 2022 Procedure. **Months before this lawsuit was filed**, UVA

---

practical impact on the [plaintiff's] rights and would not redress in any way the injury he originally asserted").

15

Health had developed and implemented a new process for reviewing requests for religious exemption from its COVID-19 and other vaccine requirements.  *See* Fittes Decl. ¶¶5–6.  Since at least October 2022, UVA Health has been evaluating any such requests for new applicants or existing employees pursuant to such process, and has granted most of the exemption requests presented.  *Id.* ¶17.  UVA Health has stated its commitment to the 2022 Procedure, and has hired an Exemption Coordinator to facilitate the process.  *Id.* ¶¶7, 14.  The prior committee has been disbanded, and a new Religious Exemption Committee has been formed, and will start reviewing exemption requests shortly.  *Id.* ¶11.  Although UVA Health disputes Plaintiffs' overly broad characterizations of its 2021 Review Process, the new review process, which has been in effect for more than two months, fully satisfies any concerns raised by Plaintiffs.

To further underscore its commitment to the new review process, UVA Health has advised Plaintiffs that their religious exemption requests are approved under the 2022 Procedure, and UVA Health has offered them reinstatement or accommodation.  *See* Exhibit F.   Under these circumstances, Plaintiffs' claims for injunctive relief are moot.  The 2021 Review Policy no longer exists; the committee Plaintiffs complain of has been disbanded; UVA Health is reviewing religious exemption requests under the 2022 Procedure; and Plaintiffs religious exemption requests have been granted under the new procedure, and they have been offered reinstatement or accommodation.  No other prospective relief if warranted or necessary.  *See e.g., Grutzmacher v. Howard Cty.*, 851 F.3d 332, 349 (4th Cir. 2017) (holding that a First Amendment challenge to a fire department's social-media policy was moot because the department had adopted a new policy and the Fire Chief had submitted an affidavit stating his intention to operate under the new policy only).

Plaintiffs may argue that the "voluntary cessation" exception to mootness applies—but it does not.  Based on the above, Defendants have demonstrated that the "allegedly wrongful behavior [can] not reasonably be expected to recur."  *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 189 (2000)); *see also Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021) (voluntary cessation doctrine exception "does not apply where there is no reasonable expectation that the wrong will be repeated") (citations and quotations omitted).  Accordingly, Plaintiffs' claims for injunctive relief should be dismissed.

## D.   Plaintiffs' Federal Individual-Capacity Claims for Money Damages Are Inadequately Pled or Barred by Qualified Immunity.

Plaintiffs have asserted federal "individual capacity" claims against Dr. K. Craig Kent, Wendy Horton, Mary Frances Southerland, Melissa Frederick, and John Does 1–5  (Compl. ¶¶ 42–44, 46–47) in which they seek money damages (Counts I–IV).  Even if all these individual-capacity claims were adequately pled—which they are not (and therefore should be dismissed)—they are barred by qualified immunity anyway.

Plaintiffs have not identified what role Dr. Kent, Ms. Horton, and Ms. Southerland played in reviewing individual exemptions.  The Complaint identifies their job titles and nothing more, including how these individuals were connected in any way to the challenged conduct.[6]  Because Plaintiffs have not alleged sufficient facts to show that these individuals engaged in any conduct that could give rise to a damage claim against them personally, the individual-capacity claims against them must be dismissed.  *See Iqbal*, 556 U.S. at 683–84 ("[P]etitioners cannot be held

---

[6] Plaintiffs inclusion of Mary Frances Southerland exemplifies this shot-gun approach.  She was not involved in the supervision of the Committee or its decision-making process, and Plaintiffs offer no factual allegations to the contrary.

liable unless **they themselves** acted on account of a constitutionally protected characteristic," even if the complaint alleges sufficient facts "against the defendants who are not before us." (emphasis added)); *see also Clark v. Md. Dep't of Pub. Safety & Corr. Servs.*, 316 F. App'x 279, 282 (4th Cir. 2009) (affirming denial of motion to amend to add claims against three additional defendants in their individual capacity, where plaintiff failed to allege facts sufficient to demonstrate any personal or supervisory wrongdoing by them).

Qualified immunity also bars all the individual-capacity claims. Qualified immunity "protect[s] government officials performing discretionary functions from civil damage suits." *McVey v. Stacy*, 157 F.3d 271, 276 (4th Cir. 1998). The defense applies "insofar as [the officials'] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* (citation omitted; brackets in original). Thus, a government official loses the protection of qualified immunity only if "(1) they violated a statutory or constitutional right of the plaintiff, and (2) the right was 'clearly established' at the time of the acts complained of such that an objectively reasonable official in their position would have known of the right." *Id.* (citation omitted).

The test of whether a right is "clearly established" favors the government official. First, "[i]n determining whether the specific right allegedly violated was 'clearly identified,' the proper focus is not upon the right at its most general or abstract level, but at the level of its application to the specific conduct being challenged." *Pritchett v. Alford*, 973 F.2d 307, 312 (4th Cir. 1992). Moreover, the official does not have "a duty to sort out conflicting decisions or to resolve subtle

or open issues." *McVey*, 157 F.3d at 277.  In other words, "[o]fficials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines." *Id.* (citation omitted).[7]

Plaintiffs contend that the Defendants nevertheless violated the Constitution because (1) they only granted exemptions to employees who were members of certain "favored religions"; and (2) because they categorically rejected religious exemptions where the employee objected to vaccination based on a connection between the vaccines and fetal cell lines.  Defendants are entitled to qualified immunity on these allegations.

First, Plaintiffs' contention that Defendants' policy was to only grant exemptions to members of certain "favored religions" and to deny all others is not supported by any facts.  Indeed, the documents Plaintiffs purport to rely on to support this allegation say the opposite.  *See Fairfax*, 2 F.4th at 292 ("[A] court may also consider documents integral to and relied upon in the complaint . . . so long as the plaintiff does not question their authenticity . . . .").

According to the training document cited by Plaintiffs (Compl. Ex. A, Dkt. 1-1), the Committee members were advised that an exemption requestor's religion or religious belief "includes not only traditional organized religions, but also religious beliefs that are new, uncommon, not part of a formal church or sect, only subscribed to by a small number of people, or that seem illogical or unreasonable to others." *Id.* at 4.  The Committee was also instructed that "[a] belief is religious if it is religious in a person's own scheme of things" and that "[t]his includes theistic as well as non-theistic moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." *Id.* at 5.

---

[7] Plaintiffs have alleged that the "clearly established" standard is met for their federal claims, Compl. ¶¶ 239 (Count 1), 247 (Count 2), 258 (Count 3), 267 (Count 4), but these are legal conclusions that the Court need not accept as true at the motion-to-dismiss stage, *see Iqbal*, 556 U.S. at 678.

To be sure, the training document identified several denominations with a known theological objection to vaccination: the Dutch Reformed Congregation, Faith Tabernacle, Church of the First Born, Faith Assembly, End Time Ministries, and Church of Christ, Scientist. *Id.* at 13. The training materials made clear, however, that exemptions were not available *only* to team members who were members of those denominations. Rather, the Committee was to review the information submitted by the employee to determine whether the employee had articulated a sincerely held religious belief that was in conflict with the vaccination mandate. *Id.* at 12–14.

Ms. Frederick's testimony, also relied on by Plaintiffs, further illustrates this point. Ms. Frederick testified that employees who were practicing those religions or belonged to those religions received an exemption if there were no "red flags." Dkt. 7-5 at 44:25–46:24; *see also* Compl. Ex. A (Dkt. 1-1) at 15 (granting exemptions for certain religions if "there is no reason to suspect dishonesty"). Ms. Frederick explained that "our process was to acknowledge those religions that prohibited vaccination. And yes, there were a number of religions that were approved based on the fact that the person was practicing that faith." Dkt. 7-5. at 45:9–13. But this did not mean that all requests by others outside of those religious were denied. Ms. Frederick explained that "our process was expanded to include both religions and religious beliefs. So yours-your submissions were [reviewed] under a religious belief." *Id.* at 47:3–6; *see also* Compl. Ex. A (Dkt. 1-1) at 4–5, 12–14.

In short, Plaintiffs' conclusory allegations, contradicted by the very documents they rely on, do not provide support for constitutional violation they allege. *See Iqbal*, 556 U.S. at 678. As such, the individual defendants are entitled to qualified immunity on Plaintiffs' "favored" religion claims.

Moreover, even if Plaintiffs state a constitutional violation, they cannot demonstrate that the individual defendants violated any clearly established right.  The pandemic brought with it a whole host of novel legal issues regarding mandatory vaccination, which have flooded the courts. In addition to substantial litigation over multiple vaccine mandates issued at the federal level, there have been countless cases filed against state and city governments, universities, and private employers.  *See, e.g.*, *George v. Grossmont Cuyamca Cmty. Coll. Dist. Bd. of Governors*, Case No. 22-cv-0424-BAS-DDL, 2022 WL 16722357 (S.D. Cal. Nov. 4, 2022) (denying request for preliminary injunction in case challenging university vaccine mandate); *Does v. Bd. of Regents of the Univ. of Colo.*, No. 21-cv-02637-RM-KMT, 2022 WL 4547563 (D. Colo. Sept. 29, 2022) (partially granting motion to dismiss in case challenging university vaccine mandate); *Kane v. De Blasio*, --- F. Supp. 3d ----, No. 21 Civ. 7863 (NRB), 2022 WL 3701183 (S.D.N.Y. Aug. 26, 2022) (granting motion to dismiss in case challenging vaccine mandate applicable to persons working in school system); *Ferrelli v. N.Y. United Court Sys.*, No. 1:22-CV-0068 (LEK/CFH), 2022 WL 673863 (N.D.N.Y. Mar. 7, 2022) (denying preliminary injunction in case challenging vaccine mandate covering state court employees); *Doe v. Mills*, 16 F.4th 20 (2d Cir. 2021) (denying motion for preliminary injunction in case involving vaccine mandate applicable to state healthcare workers); *Leigh v. Artis-Naples*, Case No. 2:22-cv-606-JLB-NPM, 2022 WL 18027780 (M.D. Fla. Dec. 30, 2022) (denying preliminary injunction in case challenging private employer vaccine mandate); *Together Emps. v. Mass. Gen. Brigham Inc.*, 573 F. Supp. 3d 412 (D. Mass. 2021) (denying preliminary injunction in case challenging vaccine mandate of private hospital).  The sheer volume of cases evidences the lack of "bright line" rules for implementing a vaccine mandate in the midst of a global pandemic.

21

Moreover, other courts have recognized that an employer may review a religious exemption request from an employee who is a member of a religion with a known theological objection to vaccination differently from a request made by an employee who states a more generalized religious belief against vaccination. *See, e.g.*, *Ferrelli*, 2022 WL 673863, at *8 (rejecting plaintiffs' claim that defendant "favored some religious beliefs over others" which was based in part on defendant requiring employees with certain religious beliefs, including an objection to vaccination because of a connection to fetal cell lines, to submit supplemental information to support their exemption requests).

Further, the issue of whether an objection based on remote testing of a vaccine on a fetal cell line constitutes a sincerely held religious belief that conflicts with a vaccination policy is a novel issue. Plaintiffs can cite no case law that existed in November 2021 that recognized a clearly established right of healthcare workers to a religious exemption to a vaccine mandate (much less to a COVID-19 vaccine mandate) on this basis—particularly during the thick of the pandemic itself.  This does not mean no such right existed; but the individual defendants should not be held personally liable for damages based on a "bad guess" in a "gray area." *McVey*, 157 F.3d 277.

Thus, the individual defendants are entitled to qualified immunity, and the § 1983 damages claims against them should be dismissed (Counts I–IV).

**E.     The Claims of Plaintiffs Phillips, Ehrlich, and Tyson Are Precluded by Prior Grievance Proceedings.**

Three of the plaintiffs—Phillips, Ehrlich, and Tyson—are precluded from relitigating whether they stated a sincerely held religious belief that conflicted with the UVA Health vaccine requirement because that issue was already litigated to a final decision through the grievance process they initiated.  Thus, their claims against the Rectors and Visitors of the University of

Virginia (as a body) and any claims asserted against UVA Health's officers and employees in their official capacity should be dismissed.

Under Virginia law, collateral estoppel or issue preclusion "precludes the same parties to a prior proceeding from litigating in a later proceeding any issue of fact that *actually was litigated* and was essential to the final judgment in the first proceeding." *Whitley v. Commonwealth*, 538 S.E.2d 296, 299 (Va. 2000) (emphasis added).[8]   This doctrine applies notwithstanding that the causes of action or the relief sought in the two proceedings may differ. *Id.*  There are four elements that must be met for a party to invoke the doctrine of issue preclusion:

> (1) the parties to the two proceedings must be the same; (2) the factual issue sought to be litigated must have been actually litigated in the prior proceeding; (3) the factual issue must have been essential to the judgment rendered in the prior proceeding; and (4) the prior proceeding must have resulted in a valid, final judgment against the party to whom the doctrine is sought to be applied.

*Id.*  Here, each of these elements is easily met.

First, the parties are the same.  Phillips, Ehrlich, and Tyson were each plaintiffs in the grievance procedure, and are named plaintiffs in this case.  Moreover, the respondent in the grievance procedure was UVA Health, which defended the actions of its officers and employees in denying a religious exemption to the plaintiffs.  UVA Health and its officers and employees are the defendants in this case.  Thus, the first element for issue preclusion is met.

The second and third elements are also satisfied.  In all three grievance procedures, the parties litigated whether the plaintiffs had asserted a sincerely held religious belief that conflicted with UVA Health's vaccine policy, such that they should have been granted a religious exemption

---

[8] Virginia law applies because the underlying judgment is a state administrative decision. *Brooks v. Arthur*, 626 F.3d 194, 200 (4th Cir. 2010) ("[B]ecause we are considering whether to give preclusive effect to state administrative decisions, we must adhere to Virginia's legal principles concerning res judicata.")

to the policy, rather than terminated for noncompliance.  And, in all three cases, the Hearing Officer considered and rejected the plaintiffs' allegations and held that they were properly terminated.  This was a central issue in each case, and indeed, was identified in the Hearing Officer's list of issues to be determined.  *See* Exhibits A-C (listing issues to include, "[w]hether there were mitigating circumstances justifying a reduction or removal of the University's decision" and "[w]hether the University discriminated against Grievant by failing to provide him with a religious exemption to its vaccination mandate").

The fourth element, a valid, final judgment, is also easily met.  The Hearing Officer issued a final decision in each case, and those decisions have become final.  It is settled Virginia law that the decision of a state Hearing Officer "is treated as the equivalent of a state court determination; it carries the same weight as a jury's verdict . . . ."  *Davani v. Clement*, 263 F. App'x 296, 297 (4th Cir. 2008) (per curiam).

In short, the claims asserted by Plaintiffs Phillips, Ehrlich, and Tyson against the Rectors and Visitors of the University of Virginia and all official capacity claims are precluded, and should be dismissed.

**F.    The Court Should Decline to Exercise Supplemental Jurisdiction over Any Remaining State Court Claims or Pieces of Those Claims.**

Based on the above, the only remaining claims are the individual-capacity claims for money damages brought pursuant to the Virginia Constitution.  The Court should decline to exercise supplemental jurisdiction over those claims and dismiss them in favor of a state forum in accordance with 28 U.S.C. § 1367(c).  Plaintiffs' state-law claims "raise[]" at least two "novel [and] complex issue[s] of State law."  28 U.S.C. § 1367(c)(1).  First, whether Article 1, Section 16 of the Virginia Constitution is self-executing so as to provide a private right of action.  *See Bayadi v. Clarke*, No. 7:16cv00003, 2017 WL 1091946, at *6 (W.D. Va. Mar. 22, 2017) (declining to

exercise supplemental jurisdiction because the plaintiff "ha[d] not establish[ed] that Article 1, Section 16 of the Virginia Constitution has been held to be self-executing").  Second, whether each defendant sued in his individual capacity meets Virginia law's four-part test laid out in *James v. Jane*, 282 S.E.2d 864 (Va. 1980), for invoking the Commonwealth's sovereign immunity as a defense to state-law claims.  *See Coleman v. Jones*, No. 20-7382, 2022 WL 2188402, at *8 (4th Cir. June 17, 2022).

"Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Bayadi*, 2017 WL 1091946, at *6 (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)) (brackets omitted).  As this Court has recognized before, *see id.*, the "appropriate course" here is to decline supplemental jurisdiction over Plaintiffs' remaining state-law claims, which are "best resolved in the first instance by the Virginia courts." *Fox v. Custis*, 712 F.2d 84, 89–90 (4th Cir. 1983) (holding that the district court should have remanded state-law claims that involved considerations of "the official immunities defense under state law").

## IV.   CONCLUSION

For the foregoing reasons, the Court should grant Defendants' Motion to Dismiss and dismiss this case in its entirety.  The Court should not reach Plaintiffs' Motion for Preliminary Injunction because their claims cannot proceed in this Court.

BY:   */s/ Wendy C. McGraw*
Robert M. Tata (VSB No. 30101)
Wendy C. McGraw (VSB No. 37880)
**HUNTON ANDREWS KURTH LLP**
500 E. Main Street, Suite 1301
Norfolk, VA  23510
Phone:  (757) 640-5328
Facsimile: (757) 625-7720
btata@HuntonAK.com
wmcgraw@HuntonAK.com

Trevor S. Cox (VSB No. 78396)
**HUNTON ANDREWS KURTH LLP**
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219
Phone:  (804) 788-7221
Facsimile: (804) 788-8218
tcox@HuntonAK.com

*Counsel for Defendants*

26