# EXHIBIT C



# COMMONWEALTH *of* VIRGINIA
## *Department of Human Resource Management*

### OFFICE OF EMPLOYMENT DISPUTE RESOLUTION

### DECISION OF HEARING OFFICER

In re:

### Case Number: 11781

| | |
|---|---|
| Hearing Date: | May 4, 2022 |
| Decision Issued: | May 24, 2022 |

### PROCEDURAL HISTORY

Grievant was removed from employment by administrative action for failure to become vaccinated against COVID-19. The University failed to send Grievant a letter notifying her of the date and terms of her removal.[1]

On December 8, 2021, Grievant timely filed a grievance to challenge the University's action. The matter advanced to hearing. On January 3, 2022, the Office of Employment Dispute Resolution assigned this appeal to the Hearing Officer. On May 4, 2022, a hearing was held by remote conference.

### APPEARANCES

Grievant
University Party Designee
University Counsel

---

[1]   The University's process to determine religious exemption was poorly designed and poorly implemented. The University should have retained records to document how group members voted and why they voted to deny religious exemption requests. The University was obligated to send Grievant a letter notifying her that she would be suspended for five days. The University was obligated to send Grievant a letter informing her that she was removed from employment and the basis for that removal. The University's failure to do so does not affect the outcome of this case because Grievant knew she had been removed from employment and filed a grievance challenging the University's action.

Witnesses

## ISSUES

1. Whether Grievant engaged in the behavior giving rise to her removal?

2. Whether there were mitigating circumstances justifying a reduction or removal of the University's action, and if so, whether aggravating circumstances existed that would overcome the mitigating circumstances?

3. Whether the University discriminated against Grievant by failing to provide her with a religious exemption to its vaccination mandate.

## BURDEN OF PROOF

The burden of proof is on the University to show by a preponderance of the evidence that its disciplinary action against the Grievant was warranted and appropriate under the circumstances. The employee has the burden of raising and establishing any affirmative defenses to discipline and any evidence of mitigating circumstances related to discipline. Grievance Procedure Manual ("GPM") § 5.8. A preponderance of the evidence is evidence which shows that what is sought to be proved is more probable than not. GPM § 9.

## FINDINGS OF FACT

After reviewing the evidence presented and observing the demeanor of each witness, the Hearing Officer makes the following findings of fact:

The University of Virginia Health System employed Grievant as an Access Associate. She began working for the University on August 14, 2017.

The University created an electronic system called VaxTrax to allow employees to submit request for exemption to the University's vaccination policy. The University refers to its employees as team members.

On August 25, 2021, the Executive Vice President sent an email to staff informing them that the University would "now require all team members without a religious or medical exemption to be vaccinated against COVID-19 by November 1, 2021. Any team member not meeting the vaccination requirement deadline will be subject to disciplinary action up to and including termination."[2]

---

[2]      University Exhibit p. 23.

The University assigned responsibility to a group of human resource employees to determining whether a request for exemption met the requirements of its vaccination policy. These employees received training on the University's policies and applicable laws. The Assistant Vice President described the employees as diverse in ethnicity and religion and having the ability to "operate in the gray."

The University's objective was to distinguish between employees holding religious beliefs that precluded the taking of COVID-19 vaccines and employees using the color of religion to express personal objections to being vaccinated. Drawing this distinction was not a simple task.

The University identified all of the reasons an employee listed for refusing to take the vaccine. The University then looked at each reason to determine if it showed a religious belief precluding vaccination or reflected a personal preference. For example, if a reason reflected false information or misinformation, the University concluded the reason did not arise because of a religious belief. If the reason reflected a personal preference such as a political opinion or healthy lifestyle choice, the University concluded that the reason was not based on a religious belief. Based on this analysis, the University determined whether the employee's application for religious exemption should be granted. The group did not document their reasoning or vote to grant or deny a request.

Over 400 employees requested religious exemptions. Employees were permitted to submit additional information after denial. Some employees submitted information three or four times. Each submission was to be reviewed by the committee. The group meet daily.

On September 9, 2021, Grievant submitted a request for religious exemption to the COVID-19 vaccination requirement.[3] Grievant explained:

I have three. 1) I believe that human life is sacred and begins at conception. 2) I believe in bodily integrity. 3) I believe in the sanctity of free will and the right to live an inviolable conscientious life.

1) It is my personal sincerely-held religious belief that abortion is murder, which is itself a violation of one of the Ten Commandments ("You shall not murder." - Exodus 20:13). For this reason, it would violate my personal, closely- and sincerely- held religious beliefs to cooperate with, or otherwise be complicit in, abortion in any manner. 2) Since the COVID-19 vaccines contain some ingredients that can potentially harm the human body, I also cannot submit to them on those grounds. "What? know ye not that your body is the temple of the Holy Ghost which is in you, which ye have of God, and

---

[3]     Grievant argued that the University closed her Vaxtrax account which prohibited her from submitting additional information. To the extent the University failed to fully consider all of Grievant's information that defect is cured by the hearing process. Grievant was permitted to submit any additional information during the hearing and argue her position during and after the hearing.

ye are not your own? For ye are bought with a price: therefore glorify God in your body, and in your spirit, which are God's.". (1 Corinthians 6:19-20 (KJV) 3) We are made in God's image and are blessed with reasoning and critical thinking skills. It is precisely these blessings that provide me with the natural right to choose what is right or what is wrong in making personal health decisions that may have profound and lasting effects on my body and soul.

Grievant attached a letter to her request for religious exemption. Grievant wrote:

First off, all of the currently-available and -advertised COVID-19 vaccines in America use, in either their testing or manufacture, fetal cell lines originating from aborted human children. As background on myself, I am a Christian and believe firmly and unreservedly that life begins at conception and terminates at its natural death. Abortion has no place in my belief system. *** The Christian Church has exemplified strong condemnation against abortion essentially since its inception. Evidence of this unwavering stance can be found in a number of sources, including the following (translated into English): The Didache, a code of conduct, per se, of early Christians dating to the first century AD, is in keeping with Scripture, stating: "[D]o not abort a foetus or kill a child that is born." *** It is my personal sincerely-held religious belief that abortion is murder, which is itself a violation of one of the Ten Commandments ("You shall not murder." - Exodus 20:13).

For this reason, it would violate my personal, closely- and sincerely-held religious beliefs to cooperate with, or otherwise be complicit in, abortion in any manner. To repeat, the COVID-19 vaccines were developed, tested and/or manufactured (and, therefore, still are) using human cell lines that were generated or derived from tissues of aborted fetuses.

Johnson & Johnson used an aborted fetal cell line in manufacturing its COVID-19 vaccine, while Moderna and Pfizer/BioNTech used aborted fetal cell lines in testing the efficacy of their vaccines.

Another personal sincerely-held religious belief I hold concerns bodily integrity. Since the COVID-19 vaccines contain some ingredients that can potentially harm the human body, I also cannot submit to them on those grounds.

Finally, but not least importantly, I hold a sincere religious belief of the sanctity of free will and the right to live an inviolable conscientious life. In the Bible, there are at least three compelling passages that are relevant to this issue: "And God said, Let us make man in our image, after our likeness: and let them have dominion over the fish of the sea, and over the fowl of the air, and over the cattle, and over all the earth, and over every creeping thing that creepeth upon the earth." (Genesis 1:26 (KJV)), "And the Lord

God said, Behold, the man is become as one of us, to know good and evil: and now, lest he put forth his hand, and take also of the tree of life, and eat, and live for ever:…" (Genesis 3:22 (KJV)) and "Conscience, I say, not thine own, but of the other: for why is my liberty judged of another man's conscience?" (1 Corinthians 10:29 (KJV)) The passages above convey that we are made in God's image and are blessed with reasoning and critical thinking skills. It is precisely these blessings that provide me with the natural right to choose what is right or what is wrong in making personal health decisions that may have profound and lasting effects on my body and soul. If I am coerced into violating my conscience, I have no free will. The mandating of vaccines rushed into production in half a year's time violates my free will.

The University denied Grievant's request for religious exemption:

Dear Applicant Thank you for your request for a religious exemption under the OCH-002-HealthScreening Policy. At this time your request is denied. To qualify for a religious exemption, you must briefly explain the religious principle, tenet or belief and how that religion's principles, tenets or beliefs conflict with or preclude you from receiving a vaccination. For information on becoming compliant with OCH-002, please visit Immunize UVA.[4]

On September 13, 2021, Grievant submitted a second request for religious exemption. She restated the information in her first request.

Grievant could choose to be vaccinated with one of at least three vaccines - the Moderna, Pfizer, or Johnson and Johnson vaccines. As of November 1, 2021, Grievant was not vaccinated for COVID-19.

The University suspended Grievant for five days. The University removed Grievant from employment but failed to send Grievant a written notification of removal. Grievant understood that she had been removed from employment and filed a grievance to challenge that action.

## CONCLUSIONS OF POLICY

Medical Center Policy 701, Employee Performance Standards and Conduct, provides:

Administrative Actions:

Without regard to the Progressive Counseling Process described in this policy, employees who fail to complete the following as directed shall be

---

[4]      University Exhibit p. 52.

suspended without pay until the requirement is successfully completed and Medical Center management is provided with documentation thereof:

Failure to complete medical screenings, vaccinations and/or tests required in Health System Policy OCH-002 "Occupational Health Screening and Maintenance."

Failure to complete all assigned and/or required testing or training modules.

Failure to renew license, certification, registration, or other credential prior to the date of expiration as required by Medical Center Human Resources Policy No. 905 "Healthcare Provider Licensure and Certification."

Any employee failing to complete the above requirements within five (5) scheduled workdays following suspension shall be terminated.

Health System Policy OCH-002 governs Occupational Health Screening and Maintenance.[5] This policy provides:

Tier 1. Team Members whose job-related activities require them to be present in Health System Facilities at any time in a given calendar year. ***

Team Members may apply for a medical or religious exemption from any requirement specified in this Policy including any additional requirements imposed by the Medical Center Hospital Epidemiologist from time to time. ***

The Team Member seeking an Exemption Request shall be provided with a written response to such request, and shall be afforded an opportunity to present additional information, if needed, in order to properly assess the request. ***

Team Members are responsible for ensuring their compliance with the requirements of this policy, and failure to comply may result in disciplinary action up to and including termination in accordance with applicable policies and procedures. ***

Tier 1: All current Tier 1 Team Members must have completed primary vaccination against COVID 19 by November 1, 2021. ***

---

[5]       Section VI(A) of the Rules for Conducting Grievance Hearing states, "in fashioning relief, the reasonableness of an established policy or procedure itself is presumed, and the hearing officer has no authority to change the policy, no matter how unclear, imprudent or ineffective he believes it may be." The Hearing Officer will not address the legality of the University's policy, however, the EEOC has taken the position that, "[t]he federal EEO laws do not prevent an employer from requiring all employees physically entering the workplace to be fully vaccinated against COVID-19 …. See, https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L

REQUESTS FOR EXEMPTION BASED ON SINCERELY HELD RELIGIOUS BELIEF: Tier 1 and Tier 2 Team Member applications for exemption from required vaccination or booster based on a sincerely held religious belief require the submission to Employee Health/WorkMed via VaxTrax of an Exemption Request consistent with this Policy. ***

Tier 1 Team Members granted an exemption for any reason must undergo weekly testing, must mask in accordance with current guidelines, and must follow all other requirements established by the Hospital Epidemiologist.

Grievant was a Tier 1 member and, thus, obligated to become vaccinated by November 1, 2021 or establish a basis for exemption from the mandate. Grievant did not become vaccinated for COVID-19. Grievant did not establish a basis for a religious exemption. The University has presented sufficient evidence to support its decision to remove Grievant.

The University denied Grievant's request for religious exemption from the vaccine mandate.

When an employer is assessing whether exempting employees from getting a vaccination would impair workplace safety, it may consider, for example, the type of workplace, the nature of the employees' duties, the location in which the employees must or can perform their duties, the number of employees who are fully vaccinated, how many employees and nonemployees physically enter the workplace, and the number of employees who will in fact need a particular accommodation.[6]

The University appropriately considered Grievant's place and duties within the University's health system. The University cares for many patients with severe illnesses and who may have no ability to repel COVID-19.

Religious Exemption

Grievant asserted she should be exempt from the University's vaccination mandate because she was entitled to a religious exemption.

Title VII of the Civil Rights Act of 1964, as amended by the Equal Employment Opportunity Act of 1972, prohibits the University from discriminating against its employees on the basis of religion. See, 42 U.S.C. § 2000e et seq.

---

[6]     https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L

Title VII requires employers to accommodate religious beliefs, practices and observances if the beliefs are "sincerely held" and the reasonable accommodation poses no undue hardship on the employer.

The EEOC stated:

Religious beliefs include theistic beliefs as well as non-theistic "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." Although courts generally resolve doubts about particular beliefs in favor of finding that they are religious, beliefs are not protected merely because they are strongly held. Rather, religion typically concerns "ultimate ideas" about "life, purpose, and death."

Social, political, or economic philosophies, as well as mere personal preferences, are not religious beliefs protected by Title VII. (Citations omitted).[7]

Title VII does not protect social, political, or economic views or personal preferences. Thus, objections to a COVID-19 vaccination requirement that are purely based on social, political, or economic views or personal preferences, or any other nonreligious concerns (including about the possible effects of the vaccine), do not qualify as religious beliefs, practices, or observances under Title VII. However, overlap between a religious and political view does not place it outside the scope of Title VII's religious protections, as long as the view is part of a comprehensive religious belief system and is not simply an isolated teaching.[8]

If an employee's objection to a COVID-19 vaccination requirement is not religious in nature, or is not sincerely held, Title VII does not require the employer to provide an exception to the vaccination requirement as a religious accommodation.[9]

A religious practice includes, "moral or ethical beliefs as to what is right and wrong which are sincerely held with the strength of traditional religious views." 29 CFR 1605.1.

In Dachman v. Shala, 9 F. App'x 186, 193 (4th Cir. 2001), the Court held:

---

[7]    https://www.eeoc.gov/laws/guidance/section-12-religious-discrimination

[8]    https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L

[9]    https://www.eeoc.gov/wysk/what-you-should-know-about-covid-19-and-ada-rehabilitation-act-and-other-eeo-laws#L

While an employer has a duty to accommodate an employee's religious beliefs, the employer does not have a duty to accommodate an employee's preferences.

There is little doubt that Grievant has sincerely held religious beliefs. Grievant must show that those sincerely held religious beliefs preclude her being vaccinated. Simply because an employee says his or her religion precludes vaccination does not make it true. There must be some rational, reasonable, and explicit connection between the employee's religious views and the employee's refusal to become vaccinated. In other words, Grievant's claim that she has religious beliefs is subject to a subjective test. Grievant's claim that her religious beliefs preclude her from being vaccinated is subject to both a subjective and objective reasonableness test.

<u>Grievant's Arguments for Religious Exemption</u>

Grievant made three primary justifications for her claim of religious exemption.

*1. Belief that Life Begins at Human Conception*

Grievant does not cite any religious text expressly prohibiting vaccination. She cites religious text prohibiting abortion. It is reasonable to conclude that Grievant's religious beliefs preclude abortion. Grievant then associates the COVID-19 vaccinations with abortion. Based on that association, Grievant concludes her religious beliefs preclude her from being vaccinated.

The credibility of Grievant's conclusion depends on the strength of the association between abortion and the vaccines.

Grievant argued:

To repeat, the COVID-19 vaccines were developed, tested and/or manufactured (and, therefore, still are) using human cell lines that were generated or derived from tissues of aborted fetuses. Johnson & Johnson used an aborted fetal cell line in manufacturing its COVID-19 vaccine, while Moderna and Pfizer/BioNTech used aborted fetal cell lines in testing the efficacy of their vaccines. These are facts that, to be clear, have been clearly and unequivocally substantiated.

"Johnson &amp; Johnson uses PER.C6 to produce its COVID-19 vaccine" and "Pfizer and Moderna used another immortal cell line, HEK-293, derived from the kidney of a fetus aborted in the 1970s. The cells were used during development to confirm that the genetic instructions for making the SARS-CoV-2 spike protein worked in human cells."

The Moderna, Pfizer, and Johnson and Johnson vaccines are liquids injected into a person's body. If a vaccine contained human tissue or fetal cells from an abortion, the

connection between a religious objection to abortion and a vaccine containing human tissue or fetal cells would be clear. An employee who takes the Moderna, or Pfizer vaccines, however, is not injected with human tissue or fetal cells from an abortion.[10]

If a vaccine was manufactured using human tissue or fetal cells from an abortion, the connection between a religious objection to abortion and the vaccine would be clear. None of the three vaccines were manufactured using human tissue. Only the Johnson and Johnson vaccine was manufactured using human fetal cells from an abortion according to Grievant. Grievant was free to choose the Moderna and Pfizer vaccines to avoid receiving a vaccine manufactured with human fetal cells.

> To be clear, none of the vaccines uses actual fetal tissues or cells that were acquired from aborted children. Rather, they use cell lines that were generated or derived from tissues of fetuses that were aborted decades ago. And no vaccines require ongoing abortions in their productions. However, these vaccines—and the cell lines that were used to develop these vaccines—can be traced to two abortions.[11]

Grievant asserts that when Moderna and Pfizer were developing their vaccines they "used aborted fetal cell lines in testing the efficacy of their vaccines." Grievant does not assert that after the vaccines were developed that individual doses of the vaccines were retested using fetal cell lines prior to injecting the vaccines into people.

When these two vaccines were being developed, fetal cell lines were used to test their effectiveness. There is a difference between testing done at the time of vaccine development and testing done at the time a vaccine is administered to an individual. Grievant has established that fetal cell lines were used to test the efficacy of the Moderna and Pfizer vaccines while they were being developed. She has not established that any additional testing was done as part of the process to administer the vaccines. An individual dose of the Moderna or Pfizer vaccine is not tested with fetal cells prior to its injection into a person. Thus, the administration of the Moderna and Pfizer vaccines does not involve fetal cell testing. Giving an employee the Moderna or Pfizer vaccines is not in furtherance of abortion. In other words, the vaccine dose Grievant would receive would not itself have been tested using fetal cells.

Because administering a dose of the Moderna or Pfizer vaccine is not in furtherance of abortion, Grievant has not established a sufficient nexus between receiving a dose of the Moderna or Pfizer vaccine and her religious beliefs. A mere association with abortion is not sufficient to establish that Grievant's religion precluded vaccination.

---

[10]     Grievant does not assert that the three vaccines contain human tissue.

[11]     https://www.flfamily.org/wp-content/uploads/COVID-Vaccination-Religious-Accommodation-Primer-for-Allied-Attorneys.pdf

2.    *Belief in Body Integrity*

Grievant argued:

Another personal sincerely-held religious belief I hold concerns bodily integrity. Since the COVID-19 vaccines contain some ingredients that can potentially harm the human body, I also cannot submit to them on those grounds.

The ingredients to the Moderna vaccine are:

WHAT ARE THE INGREDIENTS IN THE VACCINE? The Moderna COVID-19 Vaccine and SPIKEVAX (COVID-19 Vaccine, mRNA) contain the following ingredients: messenger ribonucleic acid (mRNA), lipids (SM-102, polyethylene glycol [PEG] 2000 dimyristoyl glycerol [DMG], cholesterol, and 1,2-distearoyl-sn-glycero-3- phosphocholine [DSPC]), tromethamine, tromethamine hydrochloride, acetic acid, sodium acetate trihydrate, and sucrose.[12]

The ingredients to the Pfizer vaccine are:

The Pfizer-BioNTech COVID-19 Vaccine is supplied as a frozen suspension in multiple dose vials with purple caps; each vial must be diluted with 1.8 mL of sterile 0.9% Sodium Chloride Injection, USP prior to use to form the vaccine. Each 0.3 mL dose of the Pfizer-BioNTech COVID-19 Vaccine supplied in multiple dose vials with purple caps contains 30 mcg of a nucleoside-modified messenger RNA (modRNA) encoding the viral spike (S) glycoprotein of SARS-CoV-2. Each 0.3 mL dose of the Pfizer-BioNTech COVID-19 Vaccine supplied in multiple dose vials with purple caps also includes the following ingredients: lipids (0.43 mg (4-hydroxybutyl)azanediyl)bis(hexane-6,1-diyl)bis(2- hexyldecanoate), 0.05 mg 2[(polyethylene glycol)-2000]-N,N-ditetradecylacetamide, 0.09 mg 1,2-distearoyl-snglycero-3-phosphocholine, and 0.2 mg cholesterol), 0.01 mg potassium chloride, 0.01 mg monobasic potassium phosphate, 0.36 mg sodium chloride, 0.07 mg dibasic sodium phosphate dihydrate, and 6 mg sucrose. The diluent (sterile 0.9% Sodium Chloride Injection, USP) contributes an additional 2.16 mg sodium chloride per dose.[13]

Grievant has not identified any of the ingredients of the Moderna or Pfizer vaccine that "can potentially harm the human body." The University showed that the vaccines were safe and that vaccination served to reduce illness among employees and patients.

---

[12]    https://www.fda.gov/media/144638/download#page=3

[13]    https://www.fda.gov/media/153713/download

Grievant's refusal to take the Moderna or Pfizer vaccine is not based on her religion but based on his incorrect understanding that vaccine ingredients could harm her body.

3.    *Natural Right to Choose*

Grievant argued:

I hold a sincere religious belief of the sanctity of free will and the right to live an inviolable conscientious life. *** The passages above convey that we are made in God's image and are blessed with reasoning and critical thinking skills. It is precisely these blessings that provide me with the natural right to choose what is right or what is wrong in making personal health decisions that may have profound and lasting effects on my body and soul. If I am coerced into violating my conscience, I have no free will. The mandating of vaccines rushed into production in half a year's time violates my free will.

Grievant described her opposition to abortion because she has a "natural right to choose what is right or what is wrong in making personal health decisions." (Emphasis added.) Being blessed with reasoning and critical thinking skills does not mean every action Grievant takes is in furtherance of her religious beliefs. A natural right is not a religious tenet. Personal health decisions are not religious tenets. Grievant described her opposition to abortion because of "my free will." Having freedom and free will are widely accepted constitutional principles. Grievant's free will is not a religious tenet.

Mitigation

Grievant has not presented sufficient evidence to show that her removal should be mitigated.

Conclusion

The University has established that Grievant failed to comply with its vaccination mandate and that its policies permitted Grievant's removal for failing to do so. Grievant has not established that the University discriminated against her based on her religious beliefs. Grievant has not established a basis for religious exemption to the University's vaccination mandate.

## DECISION

For the reasons stated herein, the University's decision to remove Grievant from employment is **upheld**.

**APPEAL RIGHTS**

You may request an <u>administrative review</u> by EDR within **15 calendar** days from the date the decision was issued. Your request must be in writing and must be **received** by EDR within 15 calendar days of the date the decision was issued.

Please address your request to:

> Office of Employment Dispute Resolution
> Department of Human Resource Management
> 101 North 14th St., 12th Floor
> Richmond, VA 23219

or, send by e-mail to <u>EDR@dhrm.virginia.gov</u>, or by fax to (804) 786-1606.

You must also provide a copy of your appeal to the other party and the hearing officer. The hearing officer's **decision becomes final** when the 15-calendar day period has expired, or when requests for administrative review have been decided.

A challenge that the hearing decision is inconsistent with state or agency policy must refer to a particular mandate in state or agency policy with which the hearing decision is not in compliance. A challenge that the hearing decision is not in compliance with the grievance procedure, or a request to present newly discovered evidence, must refer to a specific requirement of the grievance procedure with which the hearing decision is not in compliance.

You may request a <u>judicial review</u> if you believe the decision is contradictory to law. You must file a notice of appeal with the clerk of the circuit court in the jurisdiction in which the grievance arose within **30 days** of the date when the decision becomes final.[1]

[See Sections 7.1 through 7.3 of the Grievance Procedure Manual for a more detailed explanation, or call EDR's toll-free Advice Line at 888-232-3842 to learn more about appeal rights from an EDR Consultant].

*/s/ Carl Wilson Schmidt*

_____
Carl Wilson Schmidt, Esq.
Hearing Officer

---

[1]     Agencies must request and receive prior approval from EDR before filing a notice of appeal.