UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
Charlottesville Division

| | |
|---|---|
| Dwayne PHILLIPS, *et al.*, | ) <br> ) <br> ) |
| Plaintiffs, | ) <br> ) |
| vs. | ) <br> ) <br> )  Case No. 3:22-cv-0075 NKM-JCH |
| RECTOR AND VISITORS OF THE UNIVERSITY OF VIRGINIA, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR MOTION FOR COURT SUPERVISION OF DEFENDANTS' COMMUNICATIONS WITH CLASS MEMBERS**

Defendants have responded to this motion as if Plaintiffs were trying to stop or limit Defendants' attempts to offer reinstatement to members of the proposed class. The truth is just the opposite. As Plaintiffs have made clear in this motion (Dkt. 38) and in their statement of position on mediation (Dkt. 45 at 1-5), Plaintiffs want to *improve* Defendants' communications with class members, in order to make them effective. Plaintiffs seek more intensive Court involvement only in the event that a mediation does not happen or fails.

Defendants' attempt to "offer reinstatement" to members of the proposed class may be a well-intentioned—but poorly-executed—attempt to get people back to work and narrow the issues in this litigation. Unfortunately, however, the offers have been communicated in a way that makes them very unlikely to have that effect. That is only confirmed by the fact that, although the original deadlines for most of the offers have now expired, Defendants' brief does not state that ***any*** member of the proposed class have actually accepted the offers of reinstatement. Thus, if Defendants are genuinely trying to offer their former employees an opportunity, then the parties need the Court's help in a mediation to improve the offers so that they can have their intended good effect.

1

Moreover, Defendants have shown that they almost certainly will try to use even unaccepted "offers" to deprive the recipients of rights in this litigation. Therefore, if the offers cannot be improved to create a meaningful chance for recipients to go back to work, the result will be that Defendants' communications will simply amount to an attempt to prejudice class members and take away their rights, while giving most of them nothing in return. This kind of communication is exactly what the Court can and must stop under Rule 23(d).

I. **Without A Mediation, Defendants' Attempted "Offers Of Reinstatement" Are Almost Certain To Be Ineffective.**

Plaintiffs have explained in detail how the purported offers of reinstatement leave the recipients "in a virtually impossible position" (Dkt. 45 at 1), as they gave the recipients mere days to respond to "an unsolicited form letter offering them an undescribed job, in an unidentified city, working with unknown people, at an unspecified rate of pay." (Dkt. 38 at 5-6.)[1] The number of people who could actually respond to and accept such an offer within the deadline was overwhelmingly likely to be very small. So of course Defendants are wrong to state (Dkt. 47 at 7-8) that they have "provide1[d] the very relief that Plaintiffs' Counsel has requested in this case." Part of what this case seeks is offers of reinstatement that class members have a meaningful opportunity to accept. Although Defendants' offers could get there if the offers were significantly improved, as they stand, they are not close to the meaningful reinstatement opportunity that this case seeks.[2]

---

[1] Defendants' statement that "[t]he Offer Letters included a deadline of 10 days to respond" (Dkt. 47 at 3) is misleading. The deadlines were ten days from the dates that UVA Health *signed* the letters; by the time the letters were delivered to the recipients, that deadline was approximately one week away. But in any event, even ten days would not be enough time for a serious job offer.

[2] On the merits of the claims themselves, Plaintiffs respectfully submit that Defendants' offers of reinstatement to each Plaintiff—and the fact that Defendants' new policy quotes almost verbatim the religious beliefs of at least two of the Plaintiffs as examples of sincere religious beliefs, even though Defendants rejected those beliefs as "insincere" under the prior policy—is a ***crystal clear admission*** that the prior policy was unlawful. Defendants tout that their new policy expressly denies any such admission of liability (Dkt. 47 at 3 *& n.4), but such a self-serving assertion is completely unavailing. The evidence speaks for itself, and in fact speaks quite loudly.

### A. Events Have Proven that the "Offers of Reinstatement" Need Major Improvement to be Effective.

At this point, experience has proved that to be true. As far as Plaintiffs are aware, the majority of "offers" originally sent by Defendants listed expiration dates of either February 7 or February 14. Both of those dates were well past the time that Defendants filed their brief in opposition to this motion—but despite that fact, Defendants' brief does not report that even a single putative class member has accepted an "offer" of "reinstatement." Plaintiffs also are not aware of any putative class member who has done so. Most of the Named Plaintiffs are still in the process of trying to clarify and negotiate the terms of their offers.[3] As of this filing, two Named Plaintiffs have negotiated with UVA Health directly and clarified the terms of the offers to the point that they were able to accept—although even they needed extensions of time past the original deadline in order to do so.[4] As far as Plaintiffs know, and as far as Defendants have told the Court, that is all: out of a proposed class of many dozens or even hundreds, no one else has accepted an "offer of reinstatement."

It does not help Defendants to argue (Dkt. 47 at 7) that "UVA Health has willingly granted extensions of time to any recipient that has asked." For one thing, Defendants offer no documentation or other evidence to support this assertion, and neither Plaintiffs nor the Court have any way of knowing whether it is true. But even more importantly, granting extensions does not help the recipients who decided that the seven-day deadline was simply too short for them to respond at all—of whom there likely are many. Nor does the possibility of an extension cure the

---

[3] It is not clear why Defendants think it helps them to argue (Dkt. 47 at 8) that "Plaintiffs themselves have elected not to accept the offers of reinstatement." To begin with, Defendants know that this is not true, as they are actively negotiating terms with most of the Plaintiffs. But more importantly, the fact that most Plaintiffs have not been able to accept the offers yet shows the opposite of what Defendants are arguing. It strongly suggests that there was a significant problem with the terms of the offers, or the manner in which they were made, or both.

[4] And even these two Plaintiffs have not reached final agreements to return to work, let alone actually gotten back on the job. Rather, they are now in the administrative screening process required by UVA Health before their job offers can become final.

overall impression of non-seriousness conveyed by allowing only seven days to learn about, consider, and accept an unsolicited job offer.

Simply put, while these "offers of reinstatement" superficially appear to offer reemployment, in reality they create serious roadblocks to reemployment at every turn. Thus, if the offers are really intended to get people back to work, they obviously are in need of significant improvement.

For that reason, Plaintiffs request that the parties mediate the issue with the Court. In fact, Defendants tacitly agree that the initial offers were deficient—and the parties are already functionally engaged in a sort of inefficient mediation-via-court-filings. Defendants and their counsel have steadfastly refused to have any discussion of these issues whatsoever with Plaintiffs' counsel. However, it appears that after Defendants read Plaintiffs' motion and statement regarding mediation, they tried to address some of the precise issues that Plaintiffs raised by sending another round of "supplemental letters." (*See* Dkt. 47 at 3-4.) This is the second time that Defendants have engaged in such conduct, since the original "reinstatement" letters themselves were obviously an attempted response to this lawsuit and Plaintiffs' preliminary-injunction motion. The next section explains why even these "supplemental letters" still need significant improvement. But the bigger point is that this whole exercise—Plaintiffs filing documents with the Court, followed by Defendants taking unilateral action purporting to address the issues without telling Plaintiffs, followed by Plaintiffs filing more documents with the Court explaining why Defendants' actions still fall short, followed by Defendants attempting more unilateral action, and so on—has been a massive waste of effort and money, compared to the parties simply sitting down with a Magistrate Judge and working out a mutually-acceptable arrangement.

### B. The Supplemental Letters Do Not Solve the Problems.

Although Defendants' "supplemental letters" provide somewhat more information than the original mailings, even taken at face value they do not resolve the significant issues here.

First, it is unknown how many "supplemental letters" were sent or who received them. Although Defendants state that they "sent supplemental letters to the Plaintiffs and other

recipients" (Dkt. 47 at 3), Defendants do not say how many letters they sent, or to whom. Putative class members who did not receive supplemental letters obviously have not had their situation changed at all.

Second, the supplemental letters still are form letters received out of the blue from an unknown person. None of them explain why UVA Health is suddenly changing its mind, more than a year after firing the recipient for a condition (being unvaccinated) that likely has not changed. None of the supplemental letters explain why they are signed by a lawyer and a human-resources executive whom the recipient likely has never met—and *not* signed by anyone the recipient worked with before, or would work with in the future. And the supplemental letters still obviously are part of a mass mailing, even stating that "unless otherwise specified, this position is based in Charlottesville, Virginia, working the same shift as your former position." (*See* Dkt. 47 at 4.) This statement would be off-putting for any recipient, but it is especially confusing for recipients whose offered jobs are *not* in Charlottesville (of whom there likely are many)[5] or *not* for the same shift that they worked before, or for recipients who previously worked irregular or variable shifts.

Third, Defendants are exaggerating when they say (Dkt. 47 at 3-4) that "[t]he Supplemental Letters provide a detailed job description." What the letters really provide is the text of the "job posting" that UVA Health normally puts on its web site to describe the job for potential applicants. Many of these postings give only a high-level description of the general variety of job, not the specific position or department in which the recipient is being offered to work. (*See, e.g.,* Dkt. 47-1 at 4-5 (noting job offer of "Access Pod Manager – Surgical Specialties," but describing in generic terms the job of "Pod Manager Patient Friendly Access"); Dkt. 47-2 at 4-5 (for job offer of "Clinic Manager – Primary Care (Pantops/North Garden)," providing a description only of "Manager Clinic – 1"). Plainly, UVA Health's normal use for these postings is as an introduction to a much

---

[5] UVA Health currently is advertising for hundreds of open positions in Manassas, Haymarket, and Culpeper. *See* UVA Health Northern Virginia & Culpeper, https://fa-euzb-saasfaprod1.fa.ocs.oraclecloud.com/hcmUI/CandidateExperience/en/sites/CX_1 (use drop-down menus to view jobs by location).

more detailed hiring process—not as a final description of a job that has already been offered. Although this information may at some level be useful, it does not come close to the information that a successful job applicant ordinarily would have by the time that the job had actually been offered and he or she was deciding whether to accept.

Fourth, the supplemental letters do not change the fact that recipients are being asked to decide whether to accept a job without ever meeting, or even speaking to, the people who would be supervising them. No responsible employer would engage in serious pre-employment discussions in this way, and Defendants have not suggested that this is a normal practice at UVA Health. That makes it quite difficult for recipients to evaluate the offer in an informed way. Moreover, it would raise red flags for any prospective employee—and especially for those who have already been fired once by the prospective employer.

Add this all up, and most recipients of the offer letters are still likely to be left wondering what is going on, and whether the "offer" can be real when it is being communicated in this manner. It is past time for the parties to step back, consider the issue comprehensively, and decide together on a better way forward. A Court-facilitated mediation would allow exactly that.

## II. If A Mediation Does Not Occur Or Fails, The Court Should Exercise Its Authority Under Rule 23(d) To Protect Class Members.

If for any reason the current round of "offers of reinstatement" are not improved upon—whether because a mediation does not happen, or happens but fails, or for any other reason—then the situation will require more assertive intervention from the Court.

As matters stand, putative class members have received communications from Defendants that are very unlikely to benefit the class members, since the "offers" seem designed to ensure that very few putative class members will or can accept them. But Defendants appear determined to argue to this Court that these communications *prejudice* class members—that even unaccepted "reinstatement offers" make parts of the class members' claims somehow "moot," or limit their

6

damages, or create an obstacle to class certification.[6] In other words, for the great majority of class members, the effect of the "offers" currently is to threaten to take away certain of their rights without giving them anything meaningful in return.[7]

As Plaintiffs' motion explains, this is precisely the sort of abusive communication to class members that Rule 23(d) authorizes the Court to regulate. (*See* Dkt. 38 at 6-7.) Defendants make no persuasive argument to the contrary. They mistakenly suggest (Dkt. 47 at 6) that Rule 23(d) does not allow the Court to step in unless their communications are coercive, or misleading, or interfere with the proposed class's relationship with counsel. That is wrong as a matter of law, as the Third Circuit has set forth: "A district court's duty and authority under Rule 23(d) to protect the integrity of the class and the administration of justice generally ***is not limited*** only to those communications that mislead or otherwise threaten to create confusion and to influence the threshold decision whether to remain in the class." *In re Sch. Asbestos Litig.*, 842 F.2d 671, 683 (3d Cir. 1988) (emphasis added). Instead, "[c]ertainly communications that seek or threaten to influence the choice of remedies are, in some instances, subject to the strictures of *Gulf Oil* and are therefore within a district court's discretion to regulate." *Id.* Indeed, at least one district court has entered a Rule 23(d) order requiring that settlement offers from a defendant to class members had to remain open for a minimum period of time, in order to ensure that class members had "time to think about it and contact Plaintiffs' counsel if they so choose." *Bublitz v. E.I. duPont de Nours & Co.*, 196 F.R.D. 545, 549 (S.D. Iowa 2000).[8] This case too involves an "offer" on a very short

---

[6] To be clear, Plaintiffs do not agree that unaccepted "offers" will have any of those effects. For instance, the Supreme Court has made very clear that even an unaccepted *settlement* offer does not moot a case. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 165 (2016). But Defendants have made clear that they likely will *argue* that the unaccepted "offers of reinstatement" impair class members' claims.

[7] Of course Plaintiffs do not want class members to "suffer more alleged damage," as Defendants suggest. (Dkt. 47 at 8.) That is why Plaintiffs want class members to receive meaningful reinstatement offers that they might actually be able to accept.

[8] Similarly, multiple courts have recognized that Rule 23(d) can warrant intervention when defendants offer arbitration agreements to class members that would cover the class claims. *E.g., In*

7

timeframe—but unlike *Bublitz*, in this case the Defendants are likely to argue that class members lost rights as a result of merely *receiving* the offers, whether or not they decided to accept them. So the need for Court intervention here is even greater.

Defendants' final objection also lacks merit: Defendants argue that they should not be required to disclose the names and contact information of individuals to whom they have "offered reinstatement," because (say Defendants) that would "identify all potential class members, and provide their contact information" to Plaintiffs. (Dkt. 47 at 8.) That is mistaken both factually and legally. Factually, it does not appear that Defendants have "offered reinstatement" to *all* class members—since even four of the eleven Named Plaintiffs have not received such "offers." So it is simply wrong for Defendants to argue that Plaintiffs are requesting some kind of wholesale identification of class members. Rather, Plaintiffs are asking only for an identification of class members with whom Defendants have had problematic communications.

But legally, even if Plaintiffs *were* asking for identification of the whole class, Defendants give no reason why such disclosure would be a problem. As the Court is well aware, identifying some or all putative class members from the defendant's records is a regular part of discovery in class actions. Defendants give no reason or authority, and Plaintiffs are aware of none, suggesting that this is somehow prohibited or problematic in the context of a Rule 23(d) motion. In fact, it makes perfect sense that problematic communications to putative class members by one side might be cured—or at least ameliorated—by allowing parallel communications from the other side. If a mediation fails, that (and monitoring of Defendants' further communications to class members) is all that Plaintiffs are requesting.

\*   \*   \*

---

*re Currency Conversion Fee Antitrust Litig.*, 361 F. Supp. 2d 237 (S.D.N.Y. 2005); *O'Connor v. Uber Techs.,* 2014 WL 1760314 (N.D. Cal. May 2, 2014.)

For the reasons stated above, and in Plaintiffs' motion (Dkt. 38) and statement of position on mediation (Dkt. 45 at 1-5), Plaintiffs respectfully submit that this Court should order mediation before a Magistrate Judge, either in-person or by videoconference,[9] as soon as possible.

Dated: February 23, 2023

Respectfully submitted,

**DWAYNE PHILLIPS, MARK EHRLICH, RYAN MESZAROS, REBECCA TYSON, REBECCA LOFLIN, JANET RIPLEY, CHRISTOPHER PARSNOW, NICOLE BOKER, JOSHUA SEILER, NADINE McCARTHY, and CHELSEA SHEPPARD, M.D.**

By their Counsel:

 s/Samuel W. Diehl
Samuel W. Diehl (MN#0388371)*
Nicholas J. Nelson (MN#0388371)*
Nathan L. Hopkins (PA#328162)*
CROSSCASTLE PLLC
333 Washington Avenue N.
Ste 300-9078
Minneapolis, MN 55401
Tel: (612) 429-8100
Email: sam.diehl@crosscastle.com
　　　　nicholas.nelson@crosscastle.com
　　　　nathan.hopkins@crosscastle.com
* Admission *Pro Hac Vice*

TERRY N. GRIMES, ESQ., P.C.
320 Elm Avenue, SW
Roanoke, Virginia 24016
Tel: 540.982.3711

---

[9] Defendants suggest (Dkt 47 at 4) that fairness somehow requires some or all of the eleven individual Plaintiffs to be present at the mediation. It is not clear why that would be necessary or even useful, since (1) the issue to be mediated is simply how Defendants will offer reinstatement, not whether Plaintiffs will accept the offers, and (2) unlike the proposed class members, most of the individual Plaintiffs already are actively negotiating the terms of their offers directly with UVA Health. But of course, the Court may require attendance at the mediation by any parties that it sees fit, and in any event, all of the individual Plaintiffs will be available to counsel for Plaintiffs as necessary.

Email: tgrimes@terryngrimes.com

Charles B. Molster, III (VSB#23613)
LAW OFFICES OF CHARLES B. MOLSTER, III PLLC
129 East Davis Street, Suite 250
Culpeper, Virginia 22701
Tel. (703) 346-1505
Email: cmolster@molsterlaw.com

Joshua A. Hetzler, Esq. (VSB #89247)
FOUNDING FREEDOMS LAW CENTER
707 E. Franklin St.
Richmond, VA 23219
Tel: (804) 801-6707
Email: josh@foundingfreedomslaw.org