IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | | |
|---|---|---|
| **DWAYNE PHILLIPS,** *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action No. 3:22-cv-00075 |
| | ) | |
| v. | ) | By: Hon. Robert S. Ballou |
| | ) | United States District Judge |
| **RECTOR AND VISITORS OF THE** | ) | |
| **UNIVERSITY OF VIRGINIA,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

This case arises from UVA Health's decision to dismiss employees who refused to be vaccinated for COVID-19. Plaintiffs, eleven former UVA Health[1] employees, bring this action alleging violations of the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, the free exercise and establishment rights guaranteed in Article I § 16 of the Virginia Constitution, and Title VII of the Civil Rights Act of 1964. Defendants filed motions to dismiss the second amended complaint, Dkts. 86, 88, 90, and Plaintiffs filed a motion for leave to file a third amended complaint, Dkt. 93.

Defendants filed three motions to dismiss.[2] The first seeks the dismissal of the claims against The Rector and Visitors of the University of Virginia, as an entity, and the claims

---

[1] Plaintiffs and Defendants use the term "UVA Health" as shorthand for "a system of related entities owned and operated by the Rector and Visitors of the University of Virginia on behalf of its Medical Center." Dkt. 89 at 1 n.1. Defendants note, however, that "UVA Health is not a separate legal entity." *Id.*

[2] "While 'personal capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law,' official-capacity suits 'generally represent only another way of pleading an action against an entity of which an officer is an agent' and in essence are

asserted against individual defendants in their official capacities (collectively "Official Capacity Defendants"). Dkt. 88. The seconds seeks the dismissal of the claims against K. Craig Kent, Chief Executive Officer of UVA Health and UVA Executive Vice President for Health Affairs, and Wendy Horton, Chief Executive Officer of UVA Medical Center, for actions taken in their personal capacities.[3] Dkt. 86. Finally, Frederick and Hoffman moved to dismiss the claims asserted against them. Dkt. 90. Plaintiffs oppose each of Defendants' motions. Dkt. 115.

I **GRANT in part** and **DENY in part** the Official Capacity Defendants' motion to dismiss, Dkt. 88, such that all of Plaintiffs' claims against defendants in their official capacities are **DISMISSED** except the Title VII claims brought by Plaintiffs Mark Ehrlich, Ryan Meszaros, Rebecca Tyson, Rebecca Loflin, Janet Ripley, and Joshua Seiler. I **GRANT** the motions to dismiss brought by Defendants Kent and Horton, Dkt. 86, and Defendants Frederick and Hoffman, Dkt. 90. I also **GRANT** Plaintiffs' motion for leave to file a third amended complaint so long as they do not attempt to resurrect dismissed claims.

**I.      Background**

I accept the following facts as true for the purpose of the motion to dismiss and draw all reasonable inferences in Plaintiffs' favor. *See King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). UVA Health mandated that Tier 1 employees be vaccinated for COVID-19 in the fall of

---

'suits against the entity.'" *Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (quoting *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985)).

[3] Plaintiffs sued Kent and Horton in their official and personal capacities. They joined the Official Capacity Defendants' motion to dismiss as to the claims asserted against them in their official capacities.

2021.[4] Plaintiffs each sought a religious exemption from the vaccination requirement for all UVA Health Tier 1 employees but were denied. Plaintiffs chose not to receive the vaccination and, as a result, lost their jobs. They bring this putative class action alleging Free Exercise and Establishment Clause claims under the federal and state constitutions and under Title VII for the termination, refusal to hire, and refusal to rehire employees and prospective employees who were denied religious exemptions and refused to comply with the vaccination mandate.

The United States recorded its first confirmed case of the COVID-19 virus on January 20, 2020. Efforts to combat the spread of the virus included the development of several vaccines, and once effective vaccines were available, UVA Health mandated that beginning November 1, 2021, its employees be vaccinated or face termination. The Centers for Medicare and Medicaid Services ("CMS") also directed on November 5, 2021, that any healthcare worker treating Medicare and Medicaid patients be vaccinated against COVID-19.[5] A significant number of patients at UVA Health are Medicare or Medicaid recipients.

The UVA Health vaccination policy allowed employees to submit requests for medical and religious exemptions. The initial policy, adopted in 2021, created a Religious Exemption Committee to review religious exemption requests ("2021 Procedure"). Training materials developed to administer religious exemption requests under the 2021 Procedure identified seven faiths with "known prohibition[s] against vaccination" and provided automatic approval for employees requesting an exemption from vaccination who were practicing members of any one

---

[4] UVA Health defines Tier 1 employees as "Team Members whose job-related activities require them to be present in Health System Facilities at any time in a given calendar year." Dkt. 143-1 Ex. A at 2.

[5] The Supreme Court upheld the CMS Mandate in *Biden v. Missouri*, 142 S. Ct. 647 (2022).

of the listed faiths. Dkt. 80-1.[6] The training materials further explained that employees who were not members of one of the listed faiths, but who had a sincerely held religious belief against receiving the COVID-19 vaccination, had "the opportunity to submit additional information." *Id.* at 15. Ten of the plaintiffs here submitted requests under the 2021 Procedure to the Religious Exemption Committee. The exemption requests were denied, and UVA Health dismissed each of these plaintiffs because they refused to take the COVID-19 vaccination.

UVA Health disbanded the Religious Exemption Committee in October 2022 in favor of an expanded exemption request review procedure ("2022 Procedure"). UVA Health named Katy Hoffman[7] as the Exemption Coordinator to determine whether an employee had a sincerely held religious belief that conflicts with the vaccine mandate. If she determined they did, UVA Health sought to determine the extent to which accommodating a particular employee's exemption request imposed an undue hardship on UVA Health. The 2022 Procedure applied when UVA Health denied the religious exemption request of the eleventh plaintiff, Nadine McCarthy.

Plaintiffs' individual religious objections to the COVID-19 vaccine can be synthesized into three main categories, with some plaintiffs asserting multiple objections. The first group asserts that a divine presence communicated to them that they should not receive the vaccine. Dkt. 80 ¶¶ 134 (Phillips), 285 (Boker). A second group claims that the vaccine contradicts

---

[6] Under limited circumstances, when resolving a motion to dismiss, a court may consider exhibits submitted with the motion without converting the motion to dismiss to one for summary judgment. *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 58 (4th Cir. 2015). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits.'" *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)).

[7] Plaintiffs named Hoffman as a defendant in the first amended complaint. Dkt. 46. She remains a defendant in the second amended complaint. Dkt. 80.

established tenets of their religious practices. *Id.* ¶¶ 166 (Ehrlich), 196 (Meszaros), 231 (Loflin), 249 (Ripley), 271 (Parsnow), 314 (McCarthy). The third group, somewhat related to the second, asserts that they refused the vaccine because it was "researched, developed, tested and/or produced using tissue derived from fetal cells harvested in previous abortions," which they claim violated their religious beliefs. *Id.* ¶¶ 135 (Phillips); *see also id.* ¶¶ 212 (Tyson), 232 (Loflin), 250 (Ripley), 271 (Parsnow), 296 (Seiler), 315 (McCarthy), 339 (Sheppard).

In January 2023, UVA Health extended "Unconditional Offer[s] of Reinstatement" to Plaintiffs Ehrlich, Loflin, Meszaros, Phillips, Ripley, Seiler, and Tyson. Dkt. 89-8–14. The letters offered each plaintiff a job comparable to their previous position at the same rate of pay and in the same geographic location. *E.g.,* Dkt. 89-8. Only Plaintiffs Ripley and Phillips have accepted their respective offers. Dkt. 89-15–16.

The Commonwealth of Virginia rescinded its COVID-19 vaccine mandate for state employees on January 15, 2022, however, UVA Health continued to align its vaccination requirements with CMS guidance. The United States ended the COVID-19 public health emergency on May 11, 2023. CMS rescinded its vaccine mandate on June 5, 2023. *See* 88 Fed. Reg. 36485, 36502. UVA Health followed suit on August 4, 2023, and no longer requires its Tier 1 employees to have the COVID-19 vaccination. Dkt. 143.

Plaintiffs assert the following claims for relief in their second amended complaint:

**Count I**: Violation of the Free Exercise Clause of the First Amendment to the United States Constitution.
**Counts II–III**: Violation of the Establishment Clause of the First Amendment.
**Count IV**: Violation of the Equal Protection Clause of the Fourteenth Amendment.
**Count V**: Violation of the Free Exercise Clause of the Virginia Constitution.
**Counts VI–VII**: Violation of the Establishment Clause of the Virginia Constitution.
**Counts VIII–X**: Violations of Title VII of the Civil Rights Act of 1964.

Dkt. 80 ¶¶ 395–526. Plaintiffs allege distinct facts in support of each claim. It is sufficient for the court's purpose, however, to group the claims into three categories: federal constitutional claims, Virginia constitutional claims, and statutory claims.

## II. Analysis

Defendants assert a variety of defenses in their motions to dismiss, including lack of subject matter jurisdiction and failure to state a claim upon which relief can be granted. A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) tests a district court's subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1). "The burden of proving subject matter jurisdiction on a Rule 12(b)(1) motion to dismiss is on the plaintiff, as the party asserting the court's jurisdiction." *Brooks v. Branham*, No. 6:22-cv-00033, 2023 WL 3761183, at *5 (W.D. Va. June 1, 2023) (citing *Adams v. Bain*, 697 F.2d 1213, 1219 (4th Cir. 1982)). "When a defendant argues that a claim fails to allege facts upon which subject matter jurisdiction can be based, all the facts alleged in the complaint are assumed to be true and the plaintiff is afforded the same procedural protection as he would receive under a Rule 12(b)(6) consideration." *Id.*

"A rule 12(b)(6) motion tests the sufficiency of a complaint; it does not, however, 'resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *King*, 825 F.3d at 214 (quoting *Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999)). To survive a motion to dismiss, the complaint "must contain 'enough facts to state a claim for relief that is plausible on its face'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

Defendants filed separate motions to dismiss according to the capacities in which they were sued. I will address each motion in turn.

### a. Official Capacity Defendants

Official Capacity Defendants challenge every count in Plaintiffs' second amended complaint. Plaintiffs bring federal constitutional claims, Counts I–IV, and state constitutional claims, Counts V–VII, against each individual defendant sued in his or her official capacity. Plaintiffs bring the Title VII claims, Counts VIII–X, against the Rector and Visitors of the University of Virginia as an entity.

I will address the federal and state constitutional claims together because Official Capacity Defendants assert a collectively dispositive defense: mootness. I will then turn to the Title VII claims.

### i. Constitutional Claims (Counts I–VII)

Plaintiffs bring claims alleging violations of the Free Exercise and Establishment Clauses of the First Amendment and the Equal Protection Clause of the Fourteenth Amendment under 42 U.S.C. § 1983. "Section 1983 'creates a cause of action against any person who, acting under color of state law, abridges a right arising under the Constitution or laws of the United States.'" *Aleman v. City of Charlotte*, No. 21-2223, slip op. at 33–34 (4th Cir. Aug. 16, 2023) (quoting *Cooper v. Sheehan*, 735 F.3d 153, 158 (4th Cir. 2013)). Plaintiffs also assert claims under Article I § 16 of the Virginia Constitution, which guarantees the free exercise of religion and precludes the establishment of a state religion.[8] Va. Const. Art. I § 16.

Plaintiffs seek only prospective relief against Official Capacity Defendants for the constitutional claims in the form of offers of reinstatement without regard to COVID-19

---

[8] In addition to the defense of mootness, Official Capacity Defendants assert that sovereign immunity bars Plaintiffs from bringing Virginia constitutional claims. They also argue that Plaintiffs fail to state a claim upon which relief can be granted. I decline to address these arguments as to Official Capacity Defendants because mootness is dispositive.

vaccination status and dissolution of the Religious Accommodations Committee. Dkt. 80 at 83 ¶ B. UVA Health rescinded its COVID-19 vaccine mandate on August 4, 2023, and the Religious Accommodations Committee has not operated since October 2022. "When a case or controversy ceases to exist—either due to a change in the facts or the law — 'the litigation is moot, and the court's subject matter jurisdiction ceases to exist also.'" *Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *S.C. Coastal Conservation League v. U.S. Army Corps of Eng'rs*, 789 F.3d 475, 482 (4th Cir. 2015)).

Article III limits federal court jurisdiction to existing cases and controversies. *See* U.S. Const. art. III, § 2, cl. 1; *Eden, LLC v. Justice*, 36 F.4th 166, 169 (4th Cir. 2022). Mootness precludes a court from "advising on legal questions 'when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome.'" *Eden*, 36 F.4th at 169 (quoting *Fleet Feet, Inc. v. NIKE, Inc.*, 986 F.3d 458, 463 (4th Cir. 2021)). This limitation applies throughout the litigation such that an action may become moot after being filed. *Id.* at 169–70. Where a plaintiff has "already received the 'precise relief' they sought," a case is moot. *Id.* at 170 (quoting *N.Y. State Rifle & Pistol Ass'n v. City of New York*, 140 S. Ct. 1525, 1526 (2020)).

Plaintiffs contend that their requests for prospective relief are not moot because (1) several plaintiffs had not accepted offers of reinstatement; (2) the offers of reinstatement would not put Plaintiffs in sufficiently similar roles as those they held before their termination; and (3) the 2022 Procedure "is just a new expression of the same discriminatory animus" as the 2021 Procedure. Dkt. 115 at 49. However, it is neither the offers of reinstatement, nor the 2022 Procedure that moots Plaintiffs' request for prospective relief. Instead, it is the recission of UVA Health's vaccine mandate on August 4, 2023, that renders the request moot. Plaintiffs are free to apply for positions with UVA Health regardless of their COVID-19 vaccination status, and

8

therefore have "already received the 'precise relief' they sought," namely that vaccination status play no role in UVA Health employment decisions. *Eden*, 36 F.4th at 170 (quoting *N.Y. State Rifle & Pistol Ass'n*, 140 S. Ct. at 1526).

Plaintiffs further argue that this action is not moot because the voluntary cessation doctrine applies. The doctrine "traces to the principle that a party should not be able to evade judicial review . . . by temporarily altering questionable behavior." *Id.* (citing *Porter v. Clarke*, 852 F.3d 358, 364 (4th Cir. 2017)). "A civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will resume." *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 162 (4th Cir. 2021). The test to assess whether a reasonable chance exists that the offending behavior may resume is "stringent . . . [a] defendant claiming mootness based on the voluntary cessation of a challenged practice must show that it is 'absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur.'" *Eden*, 36 F.4th at 171 (quoting *Lighthouse Fellowship Church*, 20 F.4th at 162). "[A] governmental entity's change of policy renders a challenge moot when the governmental entity 'has not asserted its right to enforce [the challenged policy] at any future time.'" *Porter*, 852 F.3d at 364 (quoting *Wall v. Wade*, 741 F.3d 492, 497 (4th Cir. 2014)).

The Fourth Circuit has repeatedly found moot challenges to COVID-19 restrictions which were rescinded during litigation. In *Lighthouse Fellowship Church v. Northam*, a church challenged the legality of several executive orders issued by the governor of Virginia to combat the spread of COVID-19. 20 F.4th at 157. During the pendency of the litigation, the governor ended the pandemic state of emergency, which lifted the challenged restrictions. *Id.* The Fourth Circuit held that the case was moot and that the voluntary cessation exception did not apply

9

because the governor no longer had the power to issue a new executive order involving COVID-related restrictions after the state of emergency ended. 20 F.4th at 163. The Court recognized "several significant situations where mootness has been found" in "circumstances where a challenged governmental regulation or legislation has expired." *Id.* at 163 (citing *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (Mem.); *Kremens v. Bartley*, 431 U.S. 119, 132 (1977); *Burke v. Barnes*, 479 U.S. 361, 363 (1987)). The Court rejected the church's argument that Virginia could reinstate the COVID-19 restrictions at any time, reasoning that Virginia had lifted its state of emergency and that vaccines for the virus were available. The Court also concluded that these changed circumstances demonstrated that it was "entirely speculative to assert that Governor Northam will . . . reinstate restrictions." *Id.* at 164.

The Fourth Circuit considered the West Virginia COVID-19 restrictions in *Eden, LLC v. Justice* finding that the challenges to the West Virginia COVID-19 restrictions were moot because the restrictions had been lifted during the pendency of the appeal. 36 F.4th at 171. The Court held that the voluntary cessation doctrine did not apply because the governor had not imposed any new restrictions and had publicly stated that "the advent of vaccines and other measures to combat the virus makes the likelihood of a recurrence still more remote." *Id.* (internal quotation omitted).

Plaintiffs do not challenge in this action UVA Health's decision to adopt a vaccine mandate. Rather, Plaintiffs take issue with the design of the religious exemption requirements. Each of the plaintiffs was terminated or denied employment under the 2021 or 2022 exemption procedures. Neither procedure is still in place. The suggestion that UVA Health could reinstate its COVID-19 vaccine mandate (and thus some type of religious exemption procedure) is "entirely speculative." *Eden*, 36 F.4th at 171 (quoting *Lighthouse Fellowship Church*, 20 F.4th at

10

164). Indeed, UVA Health publicly announced its intent to abandon the vaccine requirement in May and June 2023, and then provided notice to this court once it rescinded the mandate on August 4. Dkt. 143. The record contains no evidence that UVA Health is likely to reinstate its vaccine mandate. In addition, UVA Health has closely followed CMS guidelines and lifted its vaccination requirement consistent with CMS policy for health care workers providing treatment to Medicare and Medicaid patients. This strongly suggests that UVA Health will not reinstate its vaccine mandate without CMS doing so first. The fact that the federal government lifted the federal public health emergency on May 11, 2023, further suggests the government will not impose such a requirement again.

### ii. Title VII Claims (Counts VIII–X)

Plaintiffs assert disparate treatment and failure-to-accommodate claims under Title VII of the Civil Rights Act of 1964 against the Rector and Visitors of the University of Virginia as an entity.[9] Dkt. 80 ¶¶ 481–526. It is unlawful for an employer "to fail or refuse to hire or to discharge any individual . . . because of such individual's . . . religion." 42 U.S.C. § 2000e-2(a)(1). Title VII defines religion to include "all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate an employee or prospective employee's religious observance or practice without undue hardship on the conduct of the employer's business." *Id.* § 2000e(j). A plaintiff is not required to set forth facts in the complaint that constitute a prima facie case of discrimination, *Brennan*, 361 F. Supp. 3d at 507 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510–15

---

[9] Every plaintiff appears to bring both disparate treatment and failure-to-accommodate claims. For the sake of consistency, I will continue to refer to Official Capacity Defendants even though Plaintiffs only bring the Title VII claims against the Rector and Visitors of the University of Virginia as a body, not the remaining defendants sued in their official capacities.

11

(2002)), but to survive a motion to dismiss, a plaintiff alleging employment discrimination must "'state a plausible claim for relief' that 'permits the court to infer more than the mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Coleman v. Md. Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

Importantly, an employee "seeking redress for discrimination cannot file suit until she has exhausted the administrative process." *Balas v. Huntington Ingalls Indus., Inc.*, 711 F.3d 401, 406 (4th Cir. 2013) (citing 42 U.S.C. § 2000e-5(b)). Indeed, "federal courts lack subject matter jurisdiction over Title VII claims for which a plaintiff has failed to exhaust administrative remedies." *Id.* The administrative process endeavors to "notif[y] the charged party of the asserted violation . . . [and] permits effectuation of the Civil Rights Act's primary goal, the securing of voluntary compliance with the law." *Id.* at 407 (internal quotations omitted).

Accordingly, an employee complaining of illegal discrimination must contact the EEOC, which then notifies the employer of the potential charges and investigates the underlying conduct. *Id.* (citing 29 C.F.R. §§ 1601.6–28). If the EEOC cannot reach a voluntary settlement with the employer and declines to file its own lawsuit, it may issue a right-to-sue letter to the employee. 29 C.F.R. § 1601.28. The employee may not file suit against the employer for the illegal discrimination alleged unless and until the employee receives a right-to-sue letter. *Balas*, 711 F.3d at 407; 42 U.S.C. § 2000e-5(f)(1).

This mandatory claim-processing rule dooms the Title VII claims of five plaintiffs in this action. *See Fort Bend Cnty. v. Davis*, 139 S. Ct. 1843, 1849 (2019). Official Capacity Defendants assert that Plaintiffs J. Dwayne Phillips, Nicole Boker, Nadine McCarthy, Christopher Parsnow, and Dr. Chelsea Sheppard, M.D., did not file charges with the EEOC. Plaintiffs neither explicitly

refute nor concede this point and have not pled facts that plausibly show these five plaintiffs have exhausted their administrative remedies, so I will dismiss their Title VII claims.

The remaining six plaintiffs asserting Title VII religious discrimination claims against Official Capacity defendants do so under two theories: disparate treatment and failure-to-accommodate. A disparate treatment claim requires that the plaintiff show "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman*, 626 F.3d at 190. "In support, the plaintiff might allege 'that the employer treated the employee more harshly than other employees of a different religion, or no religion, who had engaged in similar conduct.'" *Brennan*, 361 F. Supp. 3d at 507 (quoting *Chalmers v. Tulon Co. of Richmond*, 101 F.3d 1012, 1017 (4th Cir. 1996).)

To state a prima facie failure-to-accommodate claim, "an employee must allege that '(1) he or she has a bona fide religious belief that conflicts with an employment requirement; (2) he or she informed the employer of this belief; and (3) he or she was disciplined for failure to comply with the conflicting employment requirement.'" *Id.* at 509 (quoting *U.S. Equal Emp. Opportunity Comm'n v. Consol Energy, Inc.*, 860 F.3d 131, 141 (4th Cir. 2017)). "Unlike disparate treatment, under a failure-to-accommodate theory, an employee can establish a claim even though she cannot show that other (unprotected) employees were treated more favorably or cannot rebut an employer's legitimate, non-discriminatory reason for her discharge." *Id.* If the employee establishes a prima facie case, "the burden then shifts to the employer to show that it could not accommodate the plaintiff's religious needs without undue hardship." *Chalmers*, 101 F.3d at 1019.

13

Official Capacity Defendants assert that Plaintiffs Mark Ehrlich and Rebecca Tyson cannot proceed on their Title VII claims because they are barred by issue preclusion.[10] These two plaintiffs challenged UVA Health's decision to dismiss them in proceedings before the Commonwealth of Virginia's Office of Employment Dispute Resolution. Dkt. 80 ¶¶ 175–176, 217–221. Plaintiffs assert that the administrative law judge ("ALJ") in Ehrlich's grievance proceedings determined that his refusal to be vaccinated on the grounds that his religious beliefs as a Seventh Day Adventist prevented him from accepting medical treatment was "a misinterpretation of his own religion." *Id.* ¶ 176. Plaintiffs also claim that the ALJ in Tyson's proceeding found that she "had misinterpreted her own religion" when she objected based on the vaccine's relationship to abortion. *Id.* ¶ 221. Official Capacity Defendants argue that these determinations preclude Ehrlich and Tyson "from relitigating whether they stated a sincerely held religious belief that conflicted with the UVA Health vaccine requirement." Dkt. 89 at 18.

"Unreviewed administrative agency findings can never be afforded preclusive effect in a subsequent Title VII action." *Rao v. Cnty of Fairfax*, 108 F.3d 42, 45 (4th Cir. 1997). In *Rao*, the Fourth Circuit summarized the Supreme Court's ruling in *University of Tennessee v. Elliot*, where the Supreme Court declined to assign preclusive effect to the factfinding of an unreviewed state administrative proceeding in a later Title VII action. 478 U.S. 788, 796 (1986). The *Rao* Court explained that "Congress did not intend unreviewed state administrative proceedings to have preclusive effect on Title VII claims" because Title VII mandates that the EEOC accord, at most, "substantial weight to the final findings and orders made by State and local authorities in

---

[10] Official Capacity Defendants assert the defense of issue preclusion as to all claims brought by Ehrlich, Tyson, and Phillips. I do not need to address the argument as to Counts I–VII brought against Official Capacity Defendants because I dismissed those claims as moot. Nor is it necessary to address the argument as to Phillips' Title VII claims against Official Capacity Defendants because he did not exhaust his administrative remedies.

proceedings commenced under State or local employment discrimination law.'" *Rao*, 108 F.3d at 45 (quoting *Elliot*, 478 U.S. at 795); 42 U.S.C. § 2000e-5(b). "[T]hrough the Congressionally-enacted 'substantial weight' standard, Congress intended something less than preclusion." *Id.*

The ALJs' findings in Ehrlich and Tyson's unreviewed administrative proceedings are not entitled to preclusive effect with respect to their Title VII claims against Official Capacity Defendants. These two proceedings are considered unreviewed because there is no indication that Ehrlich or Tyson appealed the decisions to Virginia courts. "The clear teaching of *Elliot* is that in a Title VII action a prior state decision enjoys issue preclusive effect only if rendered or reviewed by a court." *Rao*, 108 F.3d at 45 (quoting *McInnes v. California*, 943 F.2d 1088, 1093–94 (9th Cir. 1991)).

Official Capacity Defendants' remaining arguments are equally unavailing. As to the disparate treatment claims, Official Capacity Defendants assert that these plaintiffs contradict themselves by referencing UVA Health training materials, their claims exceed the scope of their EEOC charges, and the plaintiffs were terminated not because of their religious beliefs, but because they "failed to comply with a safety requirement implemented by UVA Health," namely the vaccine mandate. Dkt. 89 at 36.

I find that these plaintiffs have plausibly alleged that they held protected religious beliefs that caused them to lose their jobs when other, similarly situated employees without those beliefs did not lose their jobs. I further find that these plaintiffs have plausibly stated that they held religious beliefs that conflicted with UVA Health's vaccine mandate, that UVA Health knew of these beliefs, and that these plaintiffs were terminated for failing to comply with the mandate despite their beliefs. Development of the factual record through discovery will assist the parties,

15

and the court, in determining the merit of each remaining claim against Official Capacity Defendants.

As to the failure-to-accommodate claims, Official Capacity Defendants assert that accommodation of these plaintiffs' exemptions would have imposed undue hardship on UVA Health. An undue hardship "is shown when a burden is substantial in the overall context of an employer's business." *Groff v. DeJoy*, 600 U.S. ----, ----, 143 S. Ct. 2279, 2294 (2023). As the Supreme Court explained, "[w]hat matters . . . is that courts must apply the test in a manner that takes into account all relevant factors in the case at hand, including the particular accommodations at issue and their practical impact in light of the nature, size and operating cost of an employer." *Id.* at 2295. If not clear before *Groff*, it is certainly clear now that an undue hardship analysis is premature at the motion to dismiss stage. Doing so would put the cart before the horse—courts conduct an undue hardship analysis only if the employee first establishes a prima facie case of failure to accommodate. *Brennan*, 361 F. Supp. 3d at 507 (citing *Swierkiewicz*, 534 U.S. at 510–15). And at this stage of the proceeding, Plaintiffs are "not required to set forth facts in the Complaint that constitute a prima facie case." *Id.* The fact-intensive nature of the undue hardship analysis renders Official Capacity Defendants' argument on this point premature.

I dismiss the Title VII claims of Plaintiffs Phillips, Boker, McCarthy, Parsnow, and Sheppard for failure to exhaust their administrative remedies. I find that Plaintiffs Ehrlich, Meszaros, Tyson, Loflin, Ripley, and Seiler have plausibly alleged facts such that their Title VII disparate treatment and failure-to-accommodate claims survive Official Capacity Defendants' motion to dismiss.

### b. Personal Capacity Defendants (Kent, Horton, Frederick, and Hoffman)

Plaintiffs bring federal and state constitutional claims against Defendants Kent, Horton, Frederick, and Hoffman in their personal capacities (collectively, "Personal Capacity Defendants"). All four defendants assert qualified immunity as a defense to the federal constitutional claims. I agree that qualified immunity shields Kent, Horton, Frederick, and Hoffman, so I dismiss Plaintiffs' federal constitutional claims as to Personal Capacity Defendants. I decline to exercise supplemental jurisdiction over Plaintiffs' claims that these defendants violated religious rights afforded by Article 1, Section 16 of the Virginia Constitution, so I also dismiss Plaintiffs' Virginia constitutional claims.

### i. Federal Constitutional Claims (Counts I–IV)

Qualified immunity shields officials "from civil damages liability as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Hulbert v. Pope*, 70 F.4th 726, 732 (4th Cir. 2023). The doctrine "requires the dismissal of suits against 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Mally v. Briggs*, 475 U.S. 335, 341 (1986)). "To determine whether a complaint should survive a qualified immunity-based motion to dismiss, we . . . follow[] the two-pronged inquiry set forth by the Supreme Court, analyzing (1) whether a constitutional violation occurred and (2) whether the right violated was clearly established." *Porter v. Bd. Of Trs. Of N.C. State Univ.*, 72 F.4th 573, 581 (4th Cir. July 6, 2023) (citing *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). Courts have discretion to address either prong first "in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236.

Personal Capacity Defendants argue that they did not violate a clearly established right. "A clearly established right is one that is 'sufficiently clear that every reasonable official would

have understood that what he [or she] is doing violates that right.'" *Adams v. Ferguson*, 884 F.3d 219, 226 (4th Cir. 2018) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015)). "In other words, 'existing precedent must have placed the statutory or constitutional question beyond debate.'" *Id.* (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)). But even in the context of "novel factual circumstances," officials "can still be on notice that their conduct violates established law." *Id.* (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). At base, "the law must be 'sufficiently clear [such] that every reasonable official would have understood that what he is doing violates that right.'" *Id.* at 227 (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

"The Supreme Court has 'repeatedly told courts . . . not to define clearly established law at a high level of generality.'" *Id.* (quoting *al-Kidd*, 563 U.S. at 742). The question is "whether a right is clearly established 'in light of the specific context of the case, not as a broad general proposition.'" *Id.* (quoting *Mullenix*, 577 U.S. at 12). One context-specific formulation encompasses all the rights Plaintiffs allege Personal Capacity Defendants violated: their rights to work in healthcare unvaccinated because of their religious beliefs during the COVID-19 pandemic. These rights were not clearly established at the time UVA Health dismissed Plaintiffs from their jobs.

I do not rely on the emergent nature of the pandemic in finding that these rights were not clearly established. It is true that healthcare administrators had to craft prophylactic measures to a novel, contagious virus. Indeed, COVID-19 presented unprecedented challenges to the healthcare industry. But were healthcare administrators like Personal Capacity Defendants here to face similar objections to vaccination against another disease, such as polio, the clearly established analysis would remain the same. Plaintiffs' rights are not clearly established because of the high risk of illness and death UVA Health patients could have faced if they contracted

COVID-19 from an unvaccinated healthcare provider. UVA Health serves a variety of immunocompromised individuals because of its status as one of the largest hospital systems in Virginia. And at the time Plaintiffs lost their jobs in November 2021, COVID-19 had killed 790,066 people in the United States. *See* Centers for Disease Control, *Cumulative Provisional COVID-19 Deaths, by Week, in The United States, Reported to CDC*, https://covid.cdc.gov/covid-data-tracker/#trends_totaldeaths_select_00 (accessed Aug. 23, 2023).

The deadly nature—not the emergent nature—of the COVID-19 pandemic necessitates the conclusion that Plaintiffs' rights to work in healthcare unvaccinated (and present a potential danger to patients) because of their religious objections were not clearly established. Personal Capacity Defendants are entitled to qualified immunity against Plaintiffs' federal constitutional claims, so I dismiss them.

### ii. Virginia Constitutional Claims (Counts V–VII)

Plaintiffs bring claims under Article I, Section 16 of the Virginia Constitution against Personal Capacity Defendants. That section bars the establishment of religion and ensures the free exercise of religion in Virginia. Va. Const. Art. I, § 16. I decline to exercise supplemental jurisdiction over these state claims because they raise "novel or complex issue[s] of State law." 28 U.S.C. § 1367(c)(1).

The Supreme Court of Virginia has explained that provisions of the Virginia Constitution do not provide an independent basis for a private right of action unless they are self-executing. *See Robb v. Shockoe Slip Found.*, 228 Va. 678, 681 (1985). The parties disagree on whether § 16 is self-executing, and the Supreme Court of Virginia has never addressed the specific issue before me. *See Bayadi v. Clarke*, No. 7:16-cv-3, 2017 WL 1091946, at *6 (W.D. Va. Mar. 22, 2017). "Questions of state constitutional law are best answered by state courts, rather than by the

federal judiciary." *Id.*; *see also Richardson v. Clarke*, No. 3:18-cv-23, 2020 WL 4758361, at *8 (E.D. Va. Aug. 17, 2020) (declining to exercise supplemental jurisdiction over claims brought under Article I, § 16 of the Virginia Constitution). Thus, I dismiss these claims without prejudice.

### III. Conclusion

For the reasons stated above, Official Capacity Defendants' motion to dismiss, Dkt. 88, is **GRANTED in part** and **DENIED in part**. Plaintiffs' federal and Virginia constitutional claims against Official Capacity Defendants are **DISMISSED as moot**. The Title VII claims of Plaintiffs Phillips, Boker, McCarthy, Parsnow, and Sheppard are **DISMISSED without prejudice**. The motions brought by Defendants Kent and Horton, Dkt. 86, and Defendants Frederick and Hoffman, Dkt. 90, are **GRANTED**. Plaintiffs' federal constitutional claims against Personal Capacity Defendants are **DISMISSED with prejudice** and Plaintiffs' Virginia constitutional claims against them are **DISMISSED without prejudice**.

An appropriate order shall issue.

Entered: March 20, 2024

*Robert S. Ballou*

Robert S. Ballou
United States District Judge