# EXHIBIT 1

Case 2:22-cv-00075-RSB-RJC   Document 83-1   Filed 06/09/25   Page 2 of 23
Case 2:22-cv-01736-RJC   Document 87   Filed 06/03/25   Page 1 of 22
Pageid#: 11275

## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JACOB MEINERT, as Class Representative individually and on behalf of those Plaintiffs who submitted a religious exemption and were fired, and NICHOLAS SCHALLUS, as Class Representative individually and on behalf of those Plaintiffs who submitted a medical exemption and were fired, | ) ) ) ) ) ) ) ) | No.: 2:22-cv-01736-RJC  Judge Robert J. Colville |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | |
| PORT AUTHORITY OF ALLEGHENY COUNTY d/b/a Pittsburgh Regional Transit, | ) ) ) | |
| Defendant. | ) | |

### MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Before the Court is the Motion for Class Certification (ECF No. 72) filed by Plaintiffs, Jacob Meinert, as Class Representative individually and on behalf of those Plaintiffs who submitted religious exemptions and were fired, and Nicholas Schallus, as Class Representative individually and on behalf of those Plaintiffs who submitted a medical exemption and were fired. The Court has jurisdiction in this matter pursuant to 28 U.S.C. § 1331 and has supplemental jurisdiction over any state-law claims pursuant to 28 U.S.C. § 1367. The Motion has been fully briefed and is ripe for disposition.

### I.  Factual Background & Procedural History

#### A.  Nature of Claims and Procedural History

In the Third Amended Complaint, Plaintiffs assert claims for religious discrimination—failure to accommodate in violation of Title VII and the Pennsylvania Human Relations Act

("PHRA"); a claim for medical disability discrimination—failure to accommodate in violation of the Americans with Disabilities Act ("ADA"); and claims for religious and medical discrimination pursuant to the PHRA.  According to Plaintiffs, Defendant is a Pennsylvania public authority responsible for providing public transportation in Allegheny County.  Plaintiffs are former employees of Defendant who "were bus drivers or maintenance workers of various types who held sincerely held religious beliefs against receiving the Covid-19 vaccination." *Id.* ¶ 11.  In January of 2022, "Defendant announced that all employees must receive a Covid-19 vaccination by March 15, 2022 or face discipline up to and including termination." *Id.* ¶ 12.  Plaintiffs submitted religious and/or medical exemptions to the Covid-19 vaccination mandate. *Id.* ¶ 16.  "Defendant denied all or virtually all exemption requests it received, regardless of merit." *Id.* ¶ 18.  As a result, Plaintiffs' employment was terminated. *Id.* ¶ 42.

Plaintiff Meinert is the proposed class representative for individuals who were denied a religious exemption and were fired. *Id.* ¶ 52.  Plaintiff Schallus is the proposed class representative for individuals who were denied a medical exemption and were fired. *Id.* ¶ 53.

On April 22, 2024, Plaintiffs filed their Motion to Certify Class (ECF No. 72) along with their Brief in Support (ECF No. 73) and Exhibits.  On May 20, 2024, Defendant filed its Exhibits (ECF No. 77) and on May 21, 2024, Defendant filed its Brief in Opposition (ECF No. 80).  On June 17, 2024, Plaintiffs filed their Reply in Support (ECF No. 83).  Plaintiffs seek to certify the following classes:[1]

---

[1] Defendant correctly notes that "Plaintiffs have described their proposed class or classes differently in various court papers."  Br. in Opp. 10.  The below proposed classes come from the Proposed Order attached to Plaintiff's Motion to Certify Class.  In reviewing Plaintiff's Motion to Certify Class, the Court notes that the classes were described slightly differently on page 3 in comparison to Plaintiffs' proposed order.  Additionally, Plaintiff's Third Amended Complaint provides another slightly different description of the proposed classes at paragraphs 106-07.  The Court will proceed with the proposed classes as detailed in the Proposed Order attached to Plaintiff's Motion to Certify Class.

All Plaintiffs who submitted a religious exemption that was denied and terminated based upon undue hardship where Plaintiff was terminated or otherwise suffered an adverse employment consequence.

All Plaintiffs who submitted a medical exemption that was denied due to not having a contradiction to the CDC guidelines where Plaintiff was terminated or otherwise suffered an adverse employment consequence.

Proposed Order, Mot. to Certify Class, ECF No. 72-1.  The Court will refer to the above classes as the "religious exemption class" and the "medical exemption class," respectively.

**B. Findings of Fact**

At the outset, the Court notes that Plaintiff relies on Declarations from its Class Representatives, Jacob Meinert and Nicholas Schallus, as well as other purported class members in support of its Motion.  *See* Br. in Supp., Ex. 3.  In total Plaintiff submits 53[2], almost identical, Declarations.  *Id.*  Defendant argues that the Court may not rely on these Declarations because they fail to state that the facts are true under the penalties of perjury.  Br. in Opp. 2, n.2. Additionally, Defendant argues that the Declarations "filed on behalf of the religious and disability [P]laintiffs are identical, such that none can be true."  *Id.*  Outside of the arguments raised by Defendant, the Court additionally notes that the Declarations submitted on behalf of Rochelle S. (Ex. 3, p. 15), Jermalle Johns (Ex. 3, p. 42), and Edward J. Rompola (Ex. 3, p. 53) are missing a signature and appear to be missing the second page, given that the last sentence of each declaration suddenly cuts off.

To begin, Defendant is correct that, in general, declarations that fail to state that they are true under the penalties of perjury, cannot be considered as evidence.  *Doe v. Heart Solution, P.C.*, 923 F.3d 308, 315 (3d Cir. 2019) (finding that a statement that has not been made under penalty of perjury cannot be considered on summary judgment).  However, some Circuit Courts have held

---

[2] Technically, Plaintiff has submitted 54 Declarations.  However, the Declaration of Nicholas Carus (Ex. 3, pp. 68-69, 74-75) was submitted twice, bringing the total to 53 Declarations.

that the Federal Rules of Evidence do not apply at the class certification stage, and the Third Circuit

has yet to decide the issue. *See Allen v. Ollie's Bargain Outlet, Inc.*, 37 F.4th 890, 899 (3d Cir.

2022) ("The District Court agreed with plaintiffs, holding the Federal Rules of Evidence are

inapplicable to non-expert evidence used to certify a class. We decline to decide this question.").

The Court likewise finds that it is not necessary to decide this issue for class certification purposes.

Even assuming, that the Federal Rules of Evidence do not apply and that the Declarations are

admissible, the Court would still not find that Plaintiffs had met their burden of establishing class

certification for the reasons discussed in this Opinion.

    With evidentiary issues addressed, the Court sets forth the following facts, which, unless

otherwise noted, are not in dispute.

    As detailed by the Affidavit of Michael J. Cetra, the Chief Legal Officer of Defendant,

Defendant "provides public transportation services in Pittsburgh and Allegheny County" and its

employees "operate, maintain, and support bus, light rail, incline, and contracted paratransit

services." Aff. Cetra ¶ 4, ECF No. 77. Defendant details that "[g]iven the front-line nature of

[Defendant's] statutory purpose and services, very little of what it does can be accomplished by

employees working remotely. It is a hands-on, close-contact kind of business, both in the actual

services it provides directly to the public and in the maintenance and support functions that keep

all of the public-facing services operating safely, reliably, and efficiently." *Id.* ¶ 10.[3]

    The backdrop for this case is the COVID-19 pandemic. Sometime in early 2022, although

the parties disagree on the exact date, Defendant instituted a mandatory COVID-19 vaccination

policy. Br. in Supp. 3 (stating that Defendant instituted the policy on March 15, 2022); Br. in Opp.

3 (stating that Defendant instituted the policy on February 1, 2022). The policy "required all PRT

---

[3] Plaintiffs have not provided the Court with any briefing or proposed facts as to Defendant's business and operations.

employees to become fully vaccinated against COVID-19, or to obtain an approved medical or religious exemption from the vaccination requirement, by March 15, 2022." Br. in Opp. 3; Aff. Cetra ¶ 18. Plaintiff agrees that the policy allowed for religious and medical exemptions but presents no facts as to when exemption requests were due. Br. in Supp. 3. In order to apply for an exemption, an employee was required to complete an exemption form. *See* Def. Ex. A, pp. 2-3. In total, Defendant received 350 accommodation requests related to its vaccine policy—296 were for religious exemptions and 54 were for medical exemptions. Aff. Cetra ¶ 37. Defendant granted 43 exemption requests of which 30 were religious exemptions and 13 were medical exemptions. *Id.* ¶ 65.

The parties present conflicting facts as to how the religious and medical exemption accommodation requests were handled.

Defendant details that the exemption requests were reviewed by its Accommodation Review Committee. Aff. Cetra ¶ 3. The Committee received "paper and electronic binders containing all of the exemption requests" which "were organized by division and type of request" so that "the Committee [could] easily compare requests and Committee decisions to action it had taken with other similarly situated employees." *Id.* ¶ 39. The Committee had detailed instructions from Defendant's in-house and outside legal counsel and "the Committee conducted an individual review and assessment of each request submitted." *Id.* ¶ 40.

Defendant provides that when considering religious exemption requests, Defendant made the "decision not to challenge any objections on the grounds of sincerity or religiosity for purposes of initially assessing whether to grant the requests[,]" but that Defendant did not concede religiosity and still required all employees to submit adequate information "to demonstrate that their objections were both religious and sincerely held." *Id.* ¶ 67. When considering medical

5

exemptions, Defendant provides that it "did not consider whether the requesting employee was actually disabled under the law, but did so without prejudice to requiring an employee to prove his or her disability in case of further proceedings.  Instead, the [] Committee asked the medical consultant to consider whether a requesting employee's medical condition was recognized among medical and public health experts as a contraindication for receiving a COVID vaccine." *Id.* ¶ 66.s

If an employee's request was granted, the employee was provided information about the accommodation provided, "principally, weekly COVID testing and reporting, continuous masking at work, and physical distancing when feasible." *Id.* ¶ 42.  According to Defendant, if an employee's request was initially denied, the employee was instructed about his or her right to appeal the decision or to submit additional information/materials in support of his or her request. *Id.* ¶ 42.  Many employees took advantage of these appeal opportunities, and, in some instances, the Committee reversed its original denial.  *Id.* ¶ 43.  For employees whose requests were ultimately denied, Defendant met with them individually "to discuss the exemption request, the denial of the request, and whether there was any way to avoid [] disciplinary action."  *Id.* ¶ 47. Ultimately, Defendant "decided in good faith that it could not accommodate the religious or medical objections of the large majority of cases reasonably and without undue hardship."  *Id.* ¶ 54.

Plaintiffs maintain that Defendant's exemption process was a "sham."  Br. in Supp. 2. Plaintiffs agree that Defendant's vaccine mandate "indicated [that] it would accept religious and medical exemptions" and that "Defendant created an exemption review committee to review exemptions."  *Id.* 3.  However, Plaintiffs submit that, when reviewing religious exemptions, Defendant did not challenge "the sincerity or validity of any Plaintiffs' requests for religious exemptions." *Id.* 4; Pl. Ex. 3.  As to Plaintiffs with medical exemptions, Plaintiffs state that they

were all "denied because their pre-existent conditions or disabilities did not show a contraindication to the CDC's guidelines" and that "Defendant did not factor whether or not Plaintiffs' conditions were a recognized disability under the ADA." *Id.* at 7. Plaintiffs submit that, after receiving the exemption requests, Defendant did not "undertake an interactive process with any employee to discuss reasonable accommodations . . . because all such accommodations suddenly disappeared on the date Defendant's mandate became effective." *Id.* 6; Pl. Ex. 3. Lastly, because no accommodations were available, Plaintiffs were left with the option to get the vaccine or be fired. *Id.*

## II.      Legal Standard

Federal Rule of Civil Procedure 23 provides the applicable requirements for class certification. The Supreme Court of the United States has explained:

> Rule 23(a) states four threshold requirements applicable to all class actions: (1) numerosity (a "class [so large] that joinder of all members is impracticable"); (2) commonality ("questions of law or fact common to the class"); (3) typicality (named parties' claims or defenses "are typical ... of the class"); and (4) adequacy of representation (representatives "will fairly and adequately protect the interests of the class").

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 613 (1997) (quoting Kaplan, Continuing Work of the Civil Committee: 1966 Amendments of the Federal Rules of Civil Procedure (I), 81 Harv. L.Rev. 356, 375–400 (1967)). "In addition to satisfying Rule 23(a)'s prerequisites, parties seeking class certification must show that the action is maintainable under Rule 23(b)(1), (2), or (3)."[4] *Amchem Prod., Inc.*, 521 U.S. at 614.

"To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: Common questions must 'predominate over any questions affecting only individual members'; and class resolution must be 'superior to other available

---

[4] In the present case, Plaintiffs rely on Rule 23(b)(3) in seeking certification.

7

methods for the fair and efficient adjudication of the controversy.'" *Amchem Prod., Inc.*, 521 U.S. at 615 (quoting Fed. R. Civ. P. 23(b)(3)). "In adding 'predominance' and 'superiority' to the qualification-for-certification list, the Advisory Committee sought to cover cases 'in which a class action would achieve economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results.'" *Id.* (quoting Adv. Comm. Notes, 28 U.S.C.App., p. 697). Rule 23(b)(3) lists the following non-exhaustive factors to be considered in determining whether the proposed class meets the predominance and superiority requirements:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3). The Third Circuit further "requires that a Rule 23(b)(3) class also be 'currently and readily ascertainable.'" *Hargrove v. Sleepy's LLC*, 974 F.3d 467, 469 (3d Cir. 2020) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F.3d 583, 593 (3d Cir. 2012)). Plaintiffs must show that "(1) the class is defined with reference to objective criteria; and (2) there is a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition." *Hargrove*, 974 F.3d at 469–70 (quoting *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015)).

Each of the requirements of Rule 23 must be met for class certification to be granted, and factual determinations must be made by a preponderance of the evidence. *In re Blood Reagents Antitrust Litig.*, 783 F.3d 183, 187 (3d Cir. 2015) (quoting *In re Hydrogen Peroxide Antitrust*

*Litigation*, 552 F.3d 305, 307 (3d Cir. 2008)).  "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage[,]" and "[m]erits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied."  *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013).

## III.  Discussion

Plaintiffs' Motion requests that the Court certify both the medical exemption class and the religious exemption class pursuant to Rule 23(a) and 23(b)(3).  Defendant objects to the certification of both classes.

### A.  Medical Exemption Class

As to the medical exemption class, Defendant argues that numerosity and commonality have not been satisfied pursuant to Rule 23(a).  Therefore, the Court will focus its analysis on those two elements.

#### i.    Numerosity

Federal Rule of Civil Procedure 23(a)(1) requires that Plaintiffs' "class is so numerous that joinder of all members is impracticable" in order to be certified.  A plaintiff bears the burden of establishing numerosity by a preponderance of the evidence.  *Marcus v. BMW*, 687 F.3d 583, 594–95 (3d Cir. 2012).

Defendant argues that Plaintiffs' have failed to establish numerosity as to the medical exemption class because only twelve individuals fall into this class.  Br. in Opp. 10.  Plaintiff argues that numerosity is established because there are ninety-four people in total who were denied a religious and/or medical exemption.  Br. in Supp. 9.  Plaintiff offers no argument in opposition to Defendant's statement that there are only twelve individuals who fall into the medical exemption

class.  Additionally, Plaintiff offers no evidence detailing which putative class members are members of the medical exemption class, which putative class members are members of the religious exemption class, or if any putative class members are members of both classes.  Further, the Declarations submitted by Plaintiffs contain identical language and do not differentiate between the two classes.  For example, the Declarations of the named Plaintiffs, Jacob Meinert and Nicholas Schallus, both state the following: "I was told by Port Authority that my religious and/or medical exemption would be considered as required by law."  Br. in Supp., Ex. 3, pp. 1-4.  Therefore, the Declarations provide the Court no insight into the size of the independent religious exemption class or the independent medical exemption class at issue.

Based on the above, the Court cannot find that Plaintiffs have proven, by a preponderance of the evidence, the class size of the medical exemption class (beyond, perhaps twelve) and therefore, numerosity is not met.[5]  *Bennet v. Correctional Medical Services, Inc.*, 2008 WL 2064202, at *12 (May 14, 2008) (finding that numerosity was not met when the plaintiffs had not provided the court with an estimate of class members).  While a plaintiff is not required "to offer direct evidence of the exact number and identities of the class members," *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 252, n.10 (3d Cir. 2016) (internal citations omitted), it is equally well-established that "the plaintiffs do have the burden of showing that the size is such that the joinder of all members is impracticable.  Mere speculation as to the number of members who may be involved is not sufficient to satisfy Rule 23(a)(1)."  *Delgado v. McTighe,* 91 F.R.D. 76, 78 (E.D.Pa.1981).

---

[5] Likewise, while not argued by Defendant, the Court cannot find that Plaintiffs have proven, by a preponderance of the evidence, the class size of the religious exemption class.  Plaintiffs have offered no evidence or argument detailing the class size of either class and have instead improperly relied upon argument that there are ninety-four total potential members of both classes combined.  This is insufficient for the reasons discussed by the Court.

Without more information from Plaintiffs, the Court is left to presume that the medical exemption class contains only twelve individuals. While the Court finds that numerosity is not satisfied based on the above, the Court would likewise find that numerosity is not satisfied with a class size of twelve individuals, given the circumstances of this case.

As explained by the Third Circuit,

> While "[n]o minimum number of plaintiffs is required to maintain a suit as a class action," our Court has said that "generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001); *see also Robidoux*, 987 F.2d at 936 ("[T]he difficulty in joining as few as 40 putative class members should raise a presumption that joinder is impracticable."). At the other end of the spectrum, the Supreme Court has stated in *dicta* that a class of fifteen was "too small to meet the numerosity requirement." *Gen. Tel. Co. of the Nw, Inc. v. EEOC*, 446 U.S. 318, 331, 100 S.Ct. 1698, 64 L.Ed.2d 319 (1980). Leading treatises have collected cases and recognized the general rule that "[a] class of 20 or fewer is usually insufficiently numerous ... [a] class of 41 or more is usually sufficiently numerous.... [while] [c]lasses with between 21 and 40 members are given varying treatment. These midsized classes may or may not meet the numerosity requirement depending on the circumstances of each particular case." 5 James Wm. Moore, et al., *Moore's Federal Practice* § 23.22; *see also* 5 William B. Rubenstein, *Newberg on Class Actions* § 3:12 ("As a general guideline ... a class that encompasses fewer than 20 members will likely not be certified absent other indications of impracticability of joinder, while a class of 40 or more members raises a presumption of impracticability of joinder based on numbers alone." (internal footnotes omitted)); *Cox v. Am. Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (3d Cir. 1986) (citing Moore favorably).

*In re Modafinil Antitrust Litigation*, 837 F.3d 238, 249-50 (3d Cir. 2016).

Here, a proposed class of twelve individuals is generally disfavored. The question then becomes whether joinder would be impracticable for a proposed class of these twelve individuals. Plaintiff argues, generally, that class certification would promote consistent results and judicial economy because, if the class is not certified, Plaintiffs will be required to bring ninety-four separate actions. Reply 6. However, Plaintiffs raise no specific arguments as to why joinder of twelve medically exempt plaintiffs would be impracticable.

11

The Third Circuit instructs courts to consider the following "non-exhaustive" list of factors when determining whether joinder is impracticable: "judicial economy, the claimants' ability and motivation to litigate as joined plaintiffs, the financial resources of class members, the geographic dispersion of class members, the ability to identify future claimants, and whether the claims are for injunctive relief or for damages."  *In re Modafinil Antitrust Litigation*, 837 F.3d 238, 253 (3d Cir. 2016).  But not all factors are to be considered equally; the first two factors—judicial economy and the ability and motivation to litigate as joined plaintiffs—are "of primary importance."  *Id.*

Here, Plaintiffs have not shown that joinder would be impracticable.  While Plaintiffs raise general arguments concerning judicial economy, Plaintiffs' arguments concern the impracticality of brining ninety-four separate lawsuits.  Reply 6.   However, when analyzing the above factors, the Court must only consider the alternative of joinder, and not, the alternative of individual suits. *Modafinil*, 837 F.3d at 258 ("the numerosity rule does not envision the alternative of individual suits; it considers only the alternative of joinder").  Additionally, outside of the above judicial economy argument, which the Court finds lacks merit, Plaintiffs have presented no argument on the remaining factors.  Considering the other factors, based on the information before the Court, the Court finds that it would be entirely practicable to identify the class members given that they are all employees of Defendant.   Additionally, Defendant only operated in Pittsburgh and Allegheny County, so geographical dispersion is not at issue.  For these reasons, Plaintiffs have not met their burden of establishing that joinder is impracticable as to the medical exemption class. Therefore, for this additional reason, numerosity has not been satisfied, and the Court will not certify the medical exemption class.

### ii.    Commonality

Because the Court has found that numerosity is not satisfied, *see infra* Section III, A, i, the

Court is not required to undergo an analysis to determine whether commonality has been satisfied.

However, in the interest of completeness, the Court will undertake such an analysis.

With respect to commonality, the United States Court of Appeals for the Third Circuit has

explained:

> Federal Rule of Civil Procedure 23(a)(2) merely requires that there be "questions
> of law or fact common to the class[.]"  Commonality does not require perfect
> identity of questions of law or fact among all class members.  Rather, "even a single
> common question will do."  [*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359
> (2011)] (quotation marks and alterations omitted); *Baby Neal v. Casey*, 43 F.3d 48,
> 56 (3d Cir. 1994) (discussing how Rule 23(a)(2) "is easily met[ ]").  "A putative
> class satisfies Rule 23(a)'s commonality requirement if the named plaintiffs share
> at least one question of fact or law with the grievances of the prospective class."
> *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 382 (3d Cir. 2013) (internal quotation
> marks omitted).  A court's focus must be "on whether the defendant's conduct [is]
> common as to all of the class members[.]"  *Sullivan*, 667 F.3d at 298.  "Again, th[e]
> bar is not a high one."  *Rodriguez*, 726 F.3d at 382.

*Reyes v. Netdeposit, LLC*, 802 F.3d 469, 486 (3d Cir. 2015).  Plaintiffs must demonstrate that

there is a "specific practice," a "common mode" of exercising discretion, and a "common harm"

to their class.  *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 384 (3d Cir. 2013); *Adams Pointe I,*

*L.P. v. Tru-Flex Metal Hose Corp.*, No. 20-3528, 2021 WL 3612155, at *3 (3d Cir. Aug. 16, 2021).

A district court must ask whether determining the truth or falsity of a common contention will

resolve an issue that is central to the validity of each one of the claims in one stroke.  *Id.* at 487.

"What matters to class certification...is not the raising of common questions—even in droves—

but, rather the capacity of a class-wide proceeding to generate common *answers* apt to drive the

resolution of the litigation."  D*ukes*, 564 U.S. 338, 359 (emphasis and ellipsis in the original).

Here, Defendant argues that "the need to prove that each class member was 'a qualified

individual with a disability' would preclude class treatment because of the inherently

individualized nature of the inquiry."[6]  Resp. 11, n.8 (internal citations omitted).  In support of

commonality, Plaintiff offers the following common questions of fact and law:[7]

**Common Questions of Fact Include:**

1. Did Defendant admit or presume that Plaintiffs had religious beliefs that were sincere and valid.

2. Whether there was a standardized process of inquiring into the sincerity of the faith of any plaintiff who requested a religious exemption.

3. Whether there was a standardized process or review process for determining reasonable accommodations.

4. Whether there was a universal pattern of denying religious accommodations unless you were in a certain job classification.

5. Whether there was a universal pattern of denying religious accommodations based upon job classification.

6. Whether there was a universal denial of all medical exemptions regardless of disability or impairment unless there was a contraindication to the CDC.

7. Whether there was a universal pattern of removing all accommodations in order to force Plaintiffs to either receive the vaccination or be terminated.

8. Was the result of the universal denial the loss of employment at [Defendant].

**Common Questions of Laws (sic) include:**

1. Whether the denial of religious accommodation to the unvaccinated is lawful under federal law and state anti-decimation (sic) laws[.]

2. Whether Defendant's exemption process is consistent with federal and state employment laws[.]

---

[6] The issue highlighted by Defendant comes from the legal elements of an ADA discrimination claim.  To establish an ADA disability discrimination claim, a plaintiff must show "(a) that he is disabled within the meaning of the ADA, (2) that he is otherwise qualified for the job, with or without reasonable accommodations, and (3) that he was subject to an adverse employment decision as a result of discrimination."  *Sulima v. Tobyhanna Army Depot*, 602 F.3d 177, 185 (3d Cir. 2010).

[7] These common questions of law and fact include, and thereby risk conflating, proposed common questions for both the medical exemption class and the religious exemption class.  The Court has incorporated all of Plaintiffs' common questions here and will address them when analyzing commonality as to both the medical exemption class and the religious exemption class.

3. Whether [D]efendant admitted the sincerity and religiosity of [P]laintiff's (sic) religious beliefs[.]

4. Whether [Defendant] engaged in the interaction (sic) process as required by law.

5. Whether [Defendant] waived its ability to claim undue hardship as the result of failing to engage in the interactive process.

6. Whether [Defendant] had an undue hardship to justify religious exemptions.

7. Whether [Defendant's] removal of all accommodations in order to claim undue hardship is violation (sic) of federal and state employment laws.

8. Whether [Defendant] had an undue hardship to deny Plaintiffs' religious exemptions.

9. Whether Defendant's universal policy of denying all medical exemptions that did not show [] a contraindication is in violation of the ADA.

Br. in Supp. 10-11.

Here, the Court agrees with Defendant that commonality is not satisfied as to the medical exemption class. Determining liability of Defendant requires the Court to determine whether the class members have a disability. This is an individualized inquiry that cannot be considered on a class wide basis. Additionally, the Court would have to undertake an analysis to determine whether Plaintiffs are "qualified individuals with disabilities."[8] *Hohider v. UPS, Inc.*, 574 F.3d 169, 192 (3d Cir. 2009). As explained by the Third Circuit:

> For a plaintiff to be "qualified" under the ADA, he "must 'satisf[y] the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.' and, [he] must be able to 'perform the essential functions of the position held or desired, with or without reasonable accommodations.'" [*Taylor v. Phoenixville School Dist.*, 184 F.3d 296, 311 (3d Cir. 1999)] (first alteration in original) (quoting *Gaul v. Lucent Techs. Inc.*, 134

---

[8] Defendant does not argue that the Court would have to undertake an individual inquiry into whether the putative class members are "qualified individuals." In fact, in its Motion to Dismiss the Amended Complaint, *see* ECF No. 16, p. 13, Defendant conceded that Plaintiffs were "qualified individuals." However, the Third Circuit has noted that a district court does not engage in the rigorous analysis required by Rule 23 if it stops its analysis without fully considering whether such questions can be adjudicated without individual inquiries, even in situations where an element may not be directly at issue. *See Hohider*, 574 F.3d at 197 n.23.

F.3d 576, 580 (3d Cir. 1998)). The class, as defined, contains no unifying or limiting criteria—with respect to employment positions held or desired, for instance, or conditions suffered, or accommodations sought—that potentially would permit classwide evaluation of whether each member of the class is "qualified" and thus can perform the essential functions of a given job with or without reasonable accommodation.

*Id.* at 189.

Other district courts have relied on *Holder* in finding that commonality is not satisfied under the ADA because the court would be required to engage in individualized inquiries into whether a putative class member was qualified under the ADA. *See O'Hailpin v. Hawaiian Airlines Inc.*, Civil No. 22-00532, 2023 WL 8600498, at *16 (D. Haw. Dec. 12, 2023); *see also Kittel v. City of Oxnard*, Case No. CV-17-6709, 2018 WL 6004524, at *8-9 (C.D.Cal. Feb. 20, 2018). The same is true here. The Court would be required to undergo individualized inquiries because the ADA requires a showing that the putative class members are "qualified individuals," even if Plaintiffs were able to establish that a pattern or practice of discrimination exists.[9]

Therefore, Plaintiffs have failed to establish commonality as to their medical exemption class and for this additional reason, the Court will not certify the medical exemption class.

**B.  Religious Exemption Class**

Turning to the religious exemption class, Defendant argues that the class should not be certified because commonality, pursuant to Rule 23(a), and predominance, pursuant to Rule 23(b)(3), have not been established.

---

[9] Although the parties do not explicitly address the argument, this is true even where Plaintiffs are proceeding under the theory that Defendant engaged in a pattern or practice of discriminatory behavior. In *Teamsters*, the Supreme Court set forth the framework by which courts should analyze the method of proof for pattern-or-practice claims. *See generally, Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324 (1977). However, a pattern-or-practice claim is not a free-standing cause of action and is instead another method by which disparate treatment can be shown. *United States v. City of New York*, 717 F.3d 72, 83 (2d Cir. 2013). Therefore, pattern or practice does not change the substantive elements the plaintiffs must prove in support of their claim, whether that be a Title VII claim or an ADA claim. *Hohider v. UPS, Inc.*, 574 F.3d 169, 187 (3d Cir. 2009).

i.    **Commonality**[10]

Here, Defendant argues that, "[i]n the present case, there is no disputed issue that is capable of resolution for the entire class 'in one stroke.'"  Resp. 12.  Defendant argues that the following two issues are the only disputed issues on liability: "whether the Plaintiffs held a sincere religious belief that conflicted with a job requirement" and "whether Defendant can show it was unable to reasonably accommodate Plaintiffs' religious observance or practice without undue hardship on the conduct of the employer's business."[11]  *Id.* (internal citations omitted).  Defendant argues that both of these issues concern personal inquiries and cannot be resolved on a class wide basis.  *Id.* at 13-17.   In support of their Motion, Plaintiffs identified the common questions of fact and law previously detailed by the Court.  *See Supra* Section III, A, ii.

Here, in reviewing the common questions of law and fact proposed by both parties, the case law cited by Defendant, and other relevant case law, the Court finds that commonality has not been satisfied.  Defendant argues that the sincerity of a plaintiff's religious beliefs and the ability of a defendant to reasonably accommodate a plaintiff are individual inquiries.  The Court agrees.  Determining the religious sincerity of each putative class member's religious beliefs is an inherently individual inquiry that would require the Court to consider the exemption request and genuine motivations of every Plaintiff.   While the Court acknowledges that determining the sincerity of a plaintiff's religious belief, is not a difficult hurdle for a plaintiff to meet, *see*

---

[10] The Court incorporates its legal standard for commonality addressed *supra* Section III, A, ii.

[11] The issues highlighted by Defendant come from the legal elements of a Title VII claim.  To establish a claim for religious discrimination based on a failure to accommodate under Title VII, an employee must show that "(1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017).  If the employee establishes these necessary elements, the employer must show that accommodations for the employee's religious belief could not have been made without the employer incurring an undue hardship." *Groff v. DeJoy*, 143 S. Ct. 2279, 2297 (2023).

*Moussazadeh v. Tex. Dep't of Crim. Just.*, 703 F.3d 781, 791 (5th Cir. 2012), the Court still must undertake some inquiry to ensure that each putative class member's exemption request was based on their own religious beliefs, *see Ellison v. Inova Health Care Services*, 692 F. Supp. 3d 548, 565-66 (E.D. Va. 2023) (finding that commonality was not satisfied because the court would have to undertake an individual inquiry into each plaintiffs' religious beliefs as to the COVID-19 vaccine).[12]

In an attempt to avoid the individualized inquiry into the putative class members' religious sincerity, Plaintiffs filed a Partial Motion for Summary Judgment asking the Court to find that Defendant admitted to the sincerity of Plaintiffs' religious beliefs and, as a result, Defendant should be prevented from arguing otherwise under the doctrines of waiver, estoppel, and/or forfeiture. Mot. for PSJ, ¶ 28. On September 26, 2024, the Court denied Plaintiffs' Motion for Partial Summary Judgment for the reasons detailed in the Court's Memorandum Opinion. ECF Nos. 84, 85. Nothing in Plaintiffs' Motion for Class Certification changes the Court's decision on Plaintiffs' Partial Motion for Summary Judgment and the Court will not revisit that decision.

---

[12] The Court acknowledges that the Northern District of Texas found commonality satisfied, and thus certified a religious exemption class in a COVID-19 vaccine mandate case. *See Sambrano v. United Airlines, Inc.*, 347 F.R.D. 155 (N.D. Tex. 2024), *appeal docketed*, No. 24-10780 (5th Cir. Aug. 6, 2024). In *Sambrano*, the Northern District of Texas found that commonality was satisfied as to a subclass of "all employees [Defendant] deemed customer facing who received an accommodation due to a sincerely held religious belief or medical disability and who were put on unpaid leave." *Id.* at 173-74. In doing so, the Court found that the sincerity of the putative class members' religious beliefs was not an individual inquiry because, one, it is not an exacting inquiry, and two, the putative class members were required to submit a letter from a third party who could attest to their religious sincerity at the time they submitted their religious exemption request. *Id.* 174.

Here, however, no party asserts that the vaccine mandate at issue required the putative class members to submit any letter from a third party to support their religious belief. While Named Plaintiff, Meinert, did in fact submit such a letter, *see* Def. Ex. E, there was no requirement for him to do so, and the Court is not in possession of any other exemption request by which the Court could find that any other putative class member submitted such a letter. Further, the Fifth Circuit in *Braidwood Mgmt., Inc. v. EEOC*, 70 F.4th 914 (5th Cir. 2023), reversed a district court's order certifying a Title VII class, in part, based on the district court's finding that the putative class members' religious sincerity was not an exacting inquiry stating that "the fact that a review of religious sincerity may not be demanding does not mean it is a non-existent requirement or non-essential for Rule 23 purposes." 70 F.4th at 935. Therefore, given the Fifth Circuit's ruling in *Braidwood*, and the factual distinctions noted above, the Court finds that *Sambrano* is not meaningfully persuasive for the Court's analysis in this matter.

Further, even if the Court were to find, as Plaintiffs request, that Defendant is estopped from arguing against the sincerity of Plaintiffs' religious beliefs, the Court would still find that Plaintiffs have failed to establish commonality because individual inquiries would still be required by the Court. *See O'Hailpin,* 2023 WL 8600498, at *11 (finding that even if the defendant was estopped from challenging the sincerity of a plaintiff's religious belief, the court "still cannot conclude this group of individuals can meet Rule 23's requirements based on an equally individualized assessment under 'undue hardship'").

Turning to the Defendant's arguments concerning undue hardship, the Court concludes that Defendant is correct that it's undue hardship defense additionally requires an individualized inquiry. Defendant asserts that when considering exemption requests, Defendant's "primary considerations were the job duties and location of the applicants." Resp. 5. The District of Hawai'i found that a defendant's undue hardship defense would require an individualized inquiry, where the defendant's reasonableness of providing accommodations was at issue. *O'Hailpin*, 2023 WL 8600498, at *11 (finding that commonality was not satisfied in a COVID-19 vaccine mandate case because the reasonableness of the accommodations could be an individualized inquiry). While Plaintiffs argue that Defendant did not engage in any individual analysis to determine undue hardship, *see* Br. in Supp. 10, Plaintiffs have presented no evidence in support of this position outside of the Declarations. In weighing the evidence presented by the parties, the Court cannot find that Plaintiffs have met their burden of proof in establishing that Defendant did not consider undue hardship on an individual basis. The Affidavit of Cetra along with the exemption denial letters and the Committee's review process all support a finding that Defendant considered undue hardship on an individual basis. *See* Aff. Cetra, ¶¶ 56-57, 60, 70; Pl. Ex. 4, pp. 12-17, 31.

While Plaintiffs have raised numerous putative common questions, as described above, Plaintiffs have not demonstrated "the capacity of the class-wide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 544 U.S. 338, 350 (2011). Therefore, commonality has not been satisfied, and the Court will not certify the religious exemption class.[13]

### ii.    Predominance

Defendant additionally argues that class certification is not appropriate as to the religious exemption class because Plaintiffs have failed to establish predominance. Resp. 17. Because the Rule 23(a) requirements have not been met, *see supra* Section III, B, I, the Court is not required to undergo the predominance analysis required by Rule 23(b)(3). However, in the interest of completeness, the Court will undergo such an analysis.

"The predominance inquiry seeks to resolve whether there are 'reliable means of proving classwide injury[.]'" *Reyes*, 802 F.3d at 489 (quoting *In re Rail Freight Fuel Surcharge Antitrust Litig.,* 725 F.3d 244, 252–53 (D.C. Cir. 2013)). The United States District Court for the Eastern District of Pennsylvania has explained:

---

[13] As stated *supra* FN 9, the Court's analysis does not change even upon consideration of Plaintiffs' argument that there was a pattern or practice of discrimination because Plaintiffs are still required to prove religious sincerity. *See Speer v. UCOR LLC*, Case No. 3:22-cv-426, 2023 WL 7305037, at \*10 n.12 (E.D. Tenn. Nov. 6, 2023). Further, even if the Court were to find that common questions concerning a pattern or practice of discrimination were sufficient to prove commonality, like the court in *UnifySSC v. Cody*, 2024 WL 333892 (N.D. Cal. Jan. 29, 2024)—which the Court disagrees is enough to satisfy commonality—Plaintiffs have not met their burden of establishing that any pattern or practice of discrimination exists that would result in common questions of law or fact. Plaintiffs have merely stated, in a conclusory manner, that Defendant grouped exemption requests "into categories of transportation or maintenance" and that "[i]f a person had exposure to other employees or the public, the entire classification of Plaintiffs were [sic] denied. Except that certain employees were granted exemptions based upon their particular job title and importance to Defendant." Br. in Supp. 10. Plaintiffs additionally provided common questions asking whether Defendant universally denied groups of exemptions based on job classifications. See Br. in Supp. 13. While Plaintiffs assert that this pattern or practice existed, Plaintiffs have submitted no direct evidence of any such policy by which the Court could find that common answers might arise among the class, as Plaintiff is required to do at this stage. Further, Plaintiffs own statements that some exemption requests were granted within these alleged classifications contradict Plaintiffs' argument that such a policy existed. *See Wilhoit v. AstraZeneca Pharmaceuticals LP*, Civil Action No. 22-1634, 2024 WL 2843169, at \*5-6 (D. Del. June 5, 2024) (finding that plaintiffs could not rely on *UnifySSC* to prove commonality where the plaintiffs had not presented any evidence by which the court could find that common questions of a discriminatory policy would lead to common answers).

> Class certification under Rule 23(b)(3) is appropriate only if "the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997). This requirement is considerably more demanding than Rule 23(a)'s commonality prerequisite and "imposes a more rigorous obligation upon a reviewing court to ensure that issues common to the class predominate over those affecting only individual class members." *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 297 (3d Cir. 2011).

*Sterling Heights*, 2015 WL 5097883, at *10. The predominance criterion "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Sullivan*, 667 F.3d at 29 (citing *In re Ins. Brokerage Antitrust Litig.*, 579 F.3d 241, 266 (3d Cir. 2009)).

In assessing predominance, a court "must examine each element of a legal claim 'through the prism' of Rule 23(b)." *Marcus*, 687 F.3d at 600; *see Community Bank III*, 795 F.3d at 399–400. It is the plaintiff's burden to demonstrate that the elements of each legal claim are capable of proof at trial through evidence that is common to the class rather than individual to its members. *Marcus,* 687 F.3d at 600 (citing *In re Hydrogen Peroxide*, 552 F.3d at 311). "'Because the nature of the evidence that will suffice to resolve a question determines whether the question is common or individual, a district court must formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate in a given case.'" *Marcus*, 687 F.3d at 600 (quoting *In re Hydrogen Peroxide*, 552 F.3d at 311).

Here, Plaintiffs claim that Defendant failed to accommodate their religious beliefs as required by Title VII. Third Am. Compl., pp. 35-36. To establish a claim for religious discrimination based on a failure to accommodate under Title VII, an employee must show that "(1) he held a sincere religious belief that conflicted with a job requirement, (2) he informed his employer of the conflict, and (3) he was disciplined for failing to comply with the conflicting requirement." *Fallon v. Mercy Cath. Med. Ctr of Se. Pa.*, 877 F.3d 487, 490 (3d Cir. 2017). If the

Case 2:22-cv-00075-RJC   Document 273-1   Filed 04/09/25   Page 23 of 23
Case 3:22-cv-01736-RJC   Document 64   Filed 03/25/25   Page 22 of 22
Pageid#: 11296

employee establishes these necessary elements, the employer must show that accommodations for the employee's religious belief could not have been made without the employer incurring an undue hardship."  *Groff v. DeJoy*, 143 S. Ct. 2279, 2297 (2023).

Here, Plaintiffs likewise have not met their burden of demonstrating that the elements of their Title VII claim are capable of proof at trial through evidence that is common to the class rather than individual to its members.  As discussed above by the Court, the sincerity of the putative class members' religious beliefs and the Defendant's undue hardship both turn on individualized proof.[14]

For this additional reason, the Court will not certify the religious exemption class.

## IV.    Conclusion

For the reasons discussed above, the Court will deny Plaintiff's Motion for Class Certification.  An appropriate Order of Court follows.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: March 25, 2025

cc: All counsel of record

---

[14] Again, as stated *supra* FNs 9 and 13, the Court's analysis does not change even upon consideration of Plaintiffs' implicit argument that there was a pattern or practice of discrimination because Plaintiffs are still required to prove religious sincerity.  *See Speer v. UCOR LLC*, Case No. 3:22-cv-426, 2023 WL 7305037, at *10 n.12 (E.D. Tenn. Nov. 6, 2023); *see also In re Wells Fargo Home Mortg. Overtime Pay Litig.*, 571 F.3d 953, 958 (9th Cir. 2009) (the fact that "an employer's internal exemption policies are applied uniformly to the employees" does not create predominance where "serious issues regarding individual variations" defy common proof).